In the Matter of Ronald Lee KLINE and Marshal Fay Kline, Debtors.

In the Matter of Donald Ray CULY and Nancy Joan Culy, Debtors.

Nos. 87–10286, 87–11580.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Nov. 28, 1988.

Charles Cogdell, Fort Wayne, Ind., for Kline.

Donald M. Aikman, Fort Wayne, Ind., for Kline & Culy.

Grant F. Shipley, Fort Wayne, Ind., for Culy.

## MEMORANDUM OF DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court to consider confirmation of the debtors' Chapter 12 plans, together with objections thereto raised by the Chapter 12 Trustee. With the exception of these objections, any other challenges to confirmation have been resolved. Since each of these cases involves the identical issue, the court has elected to address them with a single decision. The Trustee objects to confirmation because the plans provide that debtors will make payments directly to certain secured and priority claimants, rather than paying funds to the Trustee, who would then distribute payments to those creditors.

Before addressing the Trustee's objections, it is important to clarify precisely what is and is not at issue. The court recognizes that, because of the manner in which the United States Trustee determines the Chapter 12 Trustee's compensation, whether payments are made to creditors directly by the debtors or through the trustee impacts the case trustee's compensation. Nonetheless, these cases do not involve questions concerning the compensation of the Chapter 12 Trustee or the manner in which that compensation is determined[1]. Furthermore, these cases do not raise an issue concerning whether or not a debtor has any power to make payments directly to creditors, pursuant to a confirmed plan, rather than through the trustee. That the debtor may do so is apparently contemplated by the provisions of Chapter 12. See 11 U.S.C. § 1225(a)(5)(B)(ii) and § 1226(c). Indeed, the Trustee acknowledges that a debtor may act as disbursing agent, under certain circumstances. The question, thus, becomes not one of the power to make payments directly to creditors but, rather, the propriety of doing so.

In many respects, the seeds of the current dispute are inherent in Chapter 12's administrative structure. Much of the problem lies in Congress' attempt to force assets and liabilities, more appropriately suited to the Chapter 11 process, into a mold designed for the much simpler circumstances of consumer debtors. Congress recognized this and attempted to accommodate it, in structuring the plan's mandatory and permissive provisions. It is debateable, however, whether our legislators successfully restructured the administrative process in order to account for the differences.

While Chapter 12 is closely modeled upon Chapter 13, their provisions, particularly with regard to the treatment of secured claims, are not identical. Both § 1222 and § 1322 deal with the contents of a plan, by specifying what the plan shall do and what it may do. The mandatory requirements are almost identical. Insofar as the payment of claims is concerned, it is only necessary that the plan submit all or such portion of the debtor's future income to the supervision and control of the Trustee, as is necessary to execute the plan. 11 U.S.C. § 1222(a)(1) and § 1322(a)(1). Further, the plan must provide for full payment of the claims which are given a priority status by § 507 of the Bankruptcy Code, unless the claimant agrees to a different treatment. 11 U.S.C. § 1222(a)(2) and 11 U.S.C. § 1322(a)(2).

It is with regard to the plan's permissive provisions, particularly those concerning secured claims, where Chapter 12 and Chapter 13 begin to differ. The Chapter 12 debtor has a much greater flexibility in dealing with secured claims than its Chapter 13 counterpart.

Under Chapter 13, the debtor is given the power to modify the rights of most secured creditors. 11 U.S.C. § 1322(b)(2). The debtor also has the opportunity to cure

---

1. Because of this, cases such as *In re Greseth,* 78 B.R. 936 (D.Minn.1987); *Matter of Logemann,* 88 B.R. 938 (Bankr.S.D.Iowa 1988); *In re Citrowske,* 72 B.R. 613 (Bankr.D.Minn.1987); and, *In re Hankins,* 62 B.R. 831 (Bankr.W.D.Va.1986) are of little direct guidance. All of them addressed the question of which payments were to be considered in determining the trustee's compensation, rather than who should be disbursing the payments themselves.

defaults on secured claims, which extend beyond the life of the plan, while maintaining the current payments required by the original obligation. 11 U.S.C. § 1322(b)(5). The plan may not, however, last for more than three years, unless the court approves a longer period which cannot exceed five years. 11 U.S.C. § 1322(c). Consequently, in dealing with secured creditors, the debtor must either maintain the current payments required of it without modification, except to the extent that defaults will be cured within a reasonable period of time, or modify the rights of the creditor and, in doing so, pay the secured claim, in full, within the three to five year maximum established by Congress. *Matter of Foster,* 61 B.R. 492, 494 (Bankr.N.D.Ind.1986). Because of these restrictions, the vast majority of a Chapter 13 debtor's claims are dealt with and fully satisfied, as contemplated by the plan, within the life of the plan and, thus, discharged. See 11 U.S.C. § 1328(a). To the extent they are not satisfied, the payments to creditors remain unchanged.

The Chapter 12 debtor's ability to deal with secured claims is not so limited. The plan may modify the rights of any secured creditor, without exception. 11 U.S.C. § 1322(b)(2). The debtor has the ability to cure defaults, within a reasonable period of time, while maintaining the current payments otherwise required of it, on account of long term obligations. 11 U.S.C. § 1222(b)(5). Like Chapter 13, the plan may not extend for more than three years, unless the court approves an extension. 11 U.S.C. § 1222(c). There is, however, a critical exception to this three to five year maximum life for a Chapter 12 plan, which is found at 11 U.S.C. § 1222(b)(9). Unlike Chapter 13, the Chapter 12 debtor is not faced with the option of modifying the rights of its secured creditors and paying the claim within the life of the plan or curing defaults while maintaining current payments. The Chapter 12 debtor not only may modify the rights of secured creditors but may also pay those claims over a period of time exceeding the life of the plan. 11 U.S.C. § 1222(b)(9). When the plan has run its established life and the debtor has com-

pleted the payments it contemplates, the Chapter 12 debtor receives a discharge of the obligations dealt with by the plan, except as to the secured claims on which payments extend beyond the life of the plan. 11 U.S.C. § 1228(a).

The requirements for confirmation of a Chapter 12 plan are found at 11 U.S.C. § 1225. Nothing in the text of Chapter 12 or in this section specifically requires payments to flow through the trustee. To an extent, however, this is implicit within Chapter 12's framework. This implicit assumption is codified as § 1226, which states:

Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan. 11 U.S.C. § 1226(c).

Consequently, Congress recognized that while the Chapter 12 Trustee would generally disburse payments to creditors, it might not be the disbursing agent in all cases or with respect to all claims. Unfortunately, the Bankruptcy Code does not provide any more specific guidance concerning which claims should be paid through the trustee and which may be paid directly by the debtor. Because of this, the case law which has developed, under both Chapter 12 and Chapter 13, recognizes that the question is one which is committed to the discretion of the court. *In re Erickson Partnership,* 83 B.R. 725 (D.S.D.1988).

In exercising this court's discretion, we should take into consideration the tension, inherent in the often competing interests of the debtor and the trustee, which has been created by the framework of Chapter 12. Given the way the trustee's compensation is determined by the United States Trustee, if payments are not made through the trustee, they will not be considered in the formula for calculating the trustee's percentage compensation, even though they are made pursuant to the plan. Further, the compensation formula makes no distinction between the nature of the claim being paid—all payments made through the trustee are subject to the same percentage. Consequently, the trustee has a vested interest in maximizing his own compensation

by seeing that payments are made through him, to the fullest extent possible. *Compare In re Caudill*, 82 B.R. 969, 973–74 (Bankr.S.D.Ind.1988).

We should remember that the funding mechanism for the Trustee and the United States Trustee program is partially dependent upon the percentage fee. At the same time, however, Congress designed Chapter 12 to be an economical process, which would allow farmers the opportunity to reorganize "without going under financially." 132 Cong.Rec. S15091 (daily ed. Oct. 3, 1986) (statement of Sen. DeConcini), *reprinted in* 9 Bkr–L Ed § 81:14, at 164 (1988). *See also* 132 Cong.Rec. H8998 (daily ed. Oct. 2, 1986), *reprinted in* 9 Bkr–L Ed § 81:13, at 142 (1988).

Given the disposable income test of § 1225(b), in many instances it may make no difference to the debtor what the trustee's compensation may be. The debtor is required to dedicate 100% of its disposable income to the payments under the plan, regardless of who receives the money. Consequently, any costs associated with increasing the trustee's compensation will be borne, not by the debtor but, by the unsecured creditors. This is not, however, always the case. Things may vary, based upon a debtor's secured obligations and available income. Given the capital intensive nature of a modern farming operation, it is not unusual to see a debtor's available cash flow almost entirely consumed by the payments it will be required to make on account of secured claims. This leaves little, if anything, for the payment of other claims against the bankruptcy estate. Consequently, if we establish a requirement which demands that all payments flow though the Chapter 12 Trustee, thus becoming subject to his percentage fee, we potentially risk destroying an otherwise viable opportunity for rehabilitation, merely because of the increased compensation.

In addition to these diverse and competing interests, the court should also consider the debtor's willingness and ability to make the payments required of it, whether direct payments will adversely impact debtor's ability to comply with the plan in all other respects, and the manner which the plan and payments to creditors will operate over the course of the debtor's complete performance of the obligations it undertakes.

In attempting to balance these competing interests and countervailing considerations, the best that we can hope to achieve is an uneasy truce. There is no solution which will be completely satisfactory to all sides and which can fully address all concerns. This court therefore holds that a Chapter 12 plan may provide that the debtor will make payments directly to creditors whose claims are dealt with by the plan. This ability is not, however, unlimited. Instead, certain payments must be made through the trustee. These are the payments on account of:

a) the claims entitled to priority under § 507 which, pursuant to § 1222(a)(2), must be paid in full;

b) unsecured claims;

c) secured claims which will be fully satisfied during the life of the plan, where the creditor's rights have been modified; and,

d) the cure of an arrearage on a secured claim where the debtor will maintain the current payments otherwise required of it, as contemplated by § 1222(b)(5).

The ultimate thrust of these requirements is that the only payments which may be made directly to creditors by the debtor are those on account of secured claims, which will survive the plan and be excepted from the debtors' discharge, pursuant to 11 U.S.C. § 1228(a)(1), and the regular payments which the debtor has elected to maintain. Consequently, if the debtor modifies the rights of a secured creditor and the payments to it will exceed the life of the plan, the debtor may make those payments directly, rather than through the trustee. Similarly, if the debtor elects to cure defaults on a long term debt, while maintaining the current payments otherwise required of it, the current payments may be paid directly by the debtor. The payments designed to cure the arrearage must, however, be paid through the trustee. Finally, if a secured creditor's payments are not

altered in any way, the debtor may make payments directly, regardless of their duration. *See In re Erickson Partnership, supra,* 83 B.R. at 728–29; *In re Crum,* 85 B.R. 878, 879 (Bankr.N.D.Fla.1988); *In re Land,* 82 B.R. 572, 579–80 (Bankr.D.Colo. 1988). *See also In re Wright,* 17 B.C.D. 105, 106, 82 B.R. 422 (Bankr.W.D.Va.1988); *In re Evans,* 66 B.R. 506 (Bankr.E.D.Pa. 1986); *Matter of Reines,* 30 B.R. 555, 562 (Bankr.D.N.J.1983). *But see In re Hildebrandt,* 79 B.R. 427, 429 (Bankr.D.Minn. 1987).

Measuring the plans currently before the court against these standards, neither complies. Both plans contemplate that, at least to some extent, payments to priority creditors, which would not be considered part of debtor's normal operating expenses, will be made directly by the debtors, rather than through the trustee. The plans, also, propose to modify the rights of some secured creditors and, yet, fully satisfy these secured claims within the life of the plan. For these reasons, confirmation must be denied. An appropriate order will be entered, which will also direct the debtors to submit an amended plan, which complies with the requirements of in this decision, within twenty (20) days. The failure to do so may result in dismissal, without further notice or hearing.