**In re Beverly MARTENS d/b/a Tarafona Dairy, Debtor.**

**Bankruptcy No. 88–B–04592–A.**

United States Bankruptcy Court, D. Colorado.

March 29, 1989.

William D. Nelsch, Denver, Colo., for debtor.

William M. Bass, Denver, Colo., Chapter 12 Standing Trustee.

Kelly B. Lambert, Denver, Colo., Office of the U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Chapter 12 Trustee's ("Trustee") objection to a Chapter 12 Plan filed with this Court. The issue presented is to what degree the Chapter 12 Debtor may make Plan payments not through the Trustee, but directly to creditors and thereby avoid the Trustee's fees.

## BACKGROUND AND FACTS

1. Beverly Martens, doing business as Tarafona Dairy ("Debtor"), filed a Petition on April 12, 1988 seeking the protections of Chapter 12 of the Bankruptcy Code, 11 U.S.C. § 1201, *et seq.* The primary business of Debtor's farm operation is buying, selling, and leasing milk cows and milk product. The Debtor has filed her Amended Chapter 12 Plan, proposing payments over 36 months, and seeks an Order confirming both the Plan and its accompanying Stipulation.

2. Debtor has two primary secured creditors. The Colorado Rural Rehabilitation Corporation ("CRRC") holds a $25,000.00 promissory note and has a security interest in the Debtor's livestock and milk marketing agreement. At the time of Debtor's Petition, the CRRC note was in default. Debtor and CRRC stipulated that as of November 1, 1988, the remaining indebtedness on the note is $7,976.00, including $396.00 in interest and $989.00 for attorney's fees as a result of the default. Debtor and CRRC have agreed that Debtor will execute a new promissory note for the $7,976.00, and propose that the Debtor make direct payments to CRRC, and not through the Chapter 12 Standing Trustee.

CRRC will retain a security interest in livestock and the Debtor's milk marketing agreement.

3. The First National Bank of Canon City, N.A. ("FNBCC") holds a promissory note in the amount of $189,849.81 secured by Debtor's real property and livestock in Fremont County, Colorado. Debtor and FNBCC have stipulated that at the time the Petition was filed the amount of the debt owed to FNBCC was $205,230.69, including principal, interest and attorney's fees. Debtor and FNBCC stipulated that Debtor would surrender certain parcels of the property securing the note to FNBCC, surrender Debtor's shares in Rainbow Park Water Company to FNBCC, execute two new promissory notes in the sum of $35,000.00 and $53,000.00 respectively to FNBCC which will be secured by Debtor's remaining property, and treat the remaining $27,580.69 owed as unsecured debt.[1] Debtor's payments on the promissory notes are to be made directly to FNBCC.

4. The Stipulation between Debtor and CRRC and FNBCC also provides that Debtor shall execute and place in escrow a Deed-in-Lieu of Foreclosure covering the remaining real property and bills of sale for the Debtor's livestock. The escrow agent is the Chapter 12 Trustee. These instruments shall be released to CRRC and FNBCC in the event of Debtor's default. The Stipulation also provides that a future default shall entitle FNBCC and CRRC to relief from the stay provisions of 11 U.S.C. § 362 without further order of the Court. The Debtor also proposes to pay, through the Trustee, tax certificates presently filed against Debtor's real property.

## DISCUSSION

The Chapter 12 Trustee receives ten percent of the payments made by debtors to the Trustee for payment to creditors. The issue before the Court is which payments, if any, this Debtor may make directly to creditors rather than through the Trustee to the creditors. Any payments made by

---

1. The terms of the new $35,000.00 promissory note are 10% fixed interest, $307.16 monthly payments for 30 years. The new $53,000.00 promissory note has a fixed interest rate of 10.5% over the six-year, nine-month term of the loan, resulting in monthly payments of $922.00.

debtors directly to creditors avoids the Trustee's fees. 28 U.S.C. § 586(e)(1)(B)(ii)(I) provides that Chapter 12 and 13 Standing Trustees are to receive "a percentage fee not to exceed ten percent of the payments made under the plan." In addition, 28 U.S.C. § 586(e)(1)(A) provides an annual salary cap for Chapter 12 and 13 Trustees for amounts earned as a Trustee.[2]

In a previous, similar case in this District, a debtor, Mr. Land, attempted to have a Chapter 12 plan confirmed in which creditors were paid directly by the debtor, thus avoiding the Trustee's fees. In that case, *In re Land*, 82 B.R. 572 (Bankr.D.Colo. 1988), Judge Brumbaugh held that the plan could be confirmed, the debtor could make direct payments to creditors, and the Trustee was not entitled to any fees for direct payments made by the debtor to creditors. The payments permitted to be made directly to creditors included payments on impaired, as well as unimpaired, obligations.

Judge Brumbaugh's decision was upheld by the Colorado District Court in a short, unpublished order (No. 88–M–238, May 23, 1988, D.Colo.).[3] The Honorable Richard D. Matsch ruled that, clearly, the Bankruptcy Court has the *discretion* to approve a plan that includes direct payments to creditors. Significantly, Judge Matsch concluded his decision by observing that: "the exercise of discretion in permitting direct payments of this type will be controlled by the provisions of 11 U.S.C. § 1225 and it is not

expected that such direct payments will become routine." The Chapter 12 Trustee here invokes that phrase to require in this case that the Debtor's payments be made through him and that, generally, such direct payments not be made in a "routine" manner in this and other cases.

The analysis and conclusion in this District's *Land* case is similar to that in *In re Erickson Partnership*, 83 B.R. 725 (D.S.D. 1988). In *Erickson*, the South Dakota District Court held:

> Other than the provisions of Sections 1225(a)(1), (a)(3) and (a)(4), I can find no limitation on the types of claims bankruptcy courts may allow debtors to pay directly in their Chapter 12 plans.... I am aware that this ruling will result in a reduction in fees collected by Chapter 12 standing trustees.... If giving effect to this intent will undermine the funding of the Trustee system, as the Trustees suggest, a remedy must be sought in Congress, not the courts.

*Erickson, supra* at 729. *See, In re Crum*, 85 B.R. 878 (Bankr.N.D.Fla.1988).

A second line of cases have specifically rejected *Land*. *Matter of Logemann*, 88 B.R. 938 (Bankr.S.D.Iowa 1988), developed the bright-line rule which holds that claims which are modified and thereby impaired must be paid through, and are subject to, Trustee's fees. That court stated: "This court finds reliance upon 11

---

**2.** The Chapter 13 Trustee in this District negotiates a contract with the United States Department of Justice and currently receives three and one-half percent of all amounts paid through the Trustee under Chapter 13 plans. Due to the high number of Chapter 13 filings in this District, even with the three and one-half percent fee, the Chapter 13 Trustee is able to maximize her compensation to the amount provided by the salary cap. The Chapter 12 Standing Trustee is under very different circumstances due to the much smaller Chapter 12 case load in this District.

**3.** That order reads, in its entirety: "This bankruptcy appeal raises the question of whether the bankruptcy judge had the authority to confirm a Chapter 12 Plan of reorganization in which the debtor proposed to pay the modified claims of two secured creditors directly, thereby avoiding payment of the Standing Chapter 12 Trustee's

percentage fee under 28 U.S.C. § 586(e). The bankruptcy judge addressed this issue adequately in his memorandum opinion and order of February 3, 1988, and this court substantially concurs with the reasoning of the bankruptcy judge. The appellant and amicus have made a doomsday argument that this result will defeat the Congressional purpose of having a standing trustee in such cases. This court is not persuaded by that argument. It should be noted that the primary purpose of Chapter 12 is the protection of debtors, not the employment of trustees. Moreover, the exercise of discretion in permitting direct payments of this type will be controlled by the provisions of 11 U.S.C. § 1225 and it is not expected that such direct payments will become routine. Substantially for the reasons articulated by the bankruptcy judge, it is ORDERED that the order of confirmation is affirmed." *In re Oscar G. Land*, 96 B.R. 310 (Bankr.Co.1988), Judge Richard P. Matsch.

U.S.C. §§ 1225(a)(5)(B)(ii) as authority for direct payments on impaired claims misplaced." *Logemann* at 940. *Matter of Finkbine,* 94 B.R. 461 (Bankr.S.D.Ohio 1988) and *Matter of Kline,* 94 B.R. 557 (Bankr.N.D.Ind.1988), follow that analysis and reasoning and hold that impaired claims *must* be made through the Trustee in order for the Chapter 12 plan to be confirmable.

Impaired claims are defined in the Bankruptcy Code only at 11 U.S.C. § 1124. Courts have applied, albeit infrequently, the language of Section 1124 to Chapter 12 cases. *Matter of Finkbine, supra* at 464. Similarly, although there is no definition of impaired claims in Chapter 13, numerous courts have adopted the language in Section 1124 and applied it to Chapter 13 cases. *See,* for example, *Matter of Foster,* 670 F.2d 478, 485–493 (5th Cir.1982)—extended discussion of the Chapter 13 debtor as disbursing agent and the attempted direct payment of impaired security claims, and *In re Evans,* 66 B.R. 506, 509 (Bankr. E.D.Pa.1986)—discussion of Chapter 13 debtor's attempt to make direct payment of impaired secured claims.

The cases which reject *Land,* or otherwise require plan payments through the Trustee, rely on various other Code provisions as well, in support of their rulings. For example, they reference 11 U.S.C. § 1226(c) which states:

> Except as otherwise provided in the plan or in the order confirming the plan, the *trustee shall make payments to creditors under the plan.* (Emphasis added.)

These cases construe this particular language as an implicit assumption that plan payments are to flow through the Trustee. *Kline, supra* at 559; *Finkbine, supra* at 465; and *In re Hildebrandt,* 79 B.R. 427 (Bankr.D.Minn.1987).

Additionally, Section 1222(a)(1) of the Bankruptcy Code *mandates* that the debtor provide in a plan for:

> [T]he *submission of* all or such portion of future *earnings* or other future *income of the debtor to the supervision and control of the trustee as is neces-sary for the execution of the plan."* (Emphasis added.)

This requirement, coupled with the requirement of Section 1202(b)(4) that the Trustee must "ensure that the debtor commences making timely payments required by a confirmed plan," explicitly embodies the concept that the Chapter 12 Trustee is to, generally, play a role, a central role, in administration of and performance under a Chapter 12 plan.

The framework and operation of Chapter 12 bolsters still more that conclusion. For example, among a host of specific statutory duties, the Trustee is obligated to investigate, monitor, and advise the Court as to the operations, assets, and the plan of the debtor as well as participate in all hearings respecting debtor's plan confirmation and disposition of property. 11 U.S.C. §§ 1202(b) and 1106(a). The Trustee plays a major and valuable role in implementing Chapter 12. In fact, the failure on the part of the Trustee to perform his duties and to oversee the debtor's compliance with the plan may subject the Trustee to a surcharge for a breach of his duties. *In re Gorski,* 766 F.2d 723, 726–727 (2nd Cir. 1985).

It is thus accurate to conclude from this line of cases that the Bankruptcy Code's statutory language strongly suggests, if not mandates, plan payments made to creditors under a Chapter 12 plan are, generally, to be made through the Trustee. That conclusion is reinforced by Judge Matsch's advisory that "direct payments [to creditors] will not become routine."

▄ A third line of decisions follow a "case-by-case" approach and reasoning as reflected in *Matter of Pianowski,* 92 B.R. 225 (Bankr.W.D.Mich.1988). That case held that a bankruptcy judge should review each Chapter 12 "on a case-by-case basis and, within a given case, on an instance-by-instance basis" using certain criteria. *Pianowski, supra* at 233. That opinion listed 13 "non-exclusive factors" for the court to consider in determining whether a direct payment should be permitted pursuant to a Chapter 12 plan.

The following non-exclusive factors will be considered by this court in determining whether a direct payment may be permitted pursuant to a Chapter 12 plan:

1. The past history of the debtor;
2. the business acumen of the debtor;
3. the debtor's post-filing compliance with statutory and court-imposed duties;
4. the good faith of the debtor;
5. the ability of the debtor to achieve meaningful reorganization absent direct payments;
6. the plan treatment of each creditor to which a direct payment is proposed to be made;
7. the consent, or lack thereof, by the affected creditor to the proposed plan treatment;
8. the legal sophistication, incentive and ability of the affected creditor to monitor compliance;
9. the ability of the trustee and the court to monitor future direct payments;
10. the potential burden on the Chapter 12 trustee;
11. the possible effect upon the trustee's salary or funding of the U.S. Trustee system;
12. the potential for abuse of the bankruptcy system;
13. the existence of other unique or special circumstances. (Footnotes omitted.)

*Matter of Pianowski, supra* at 233–234.[4]

The court in *Pianowski* thereupon analyzed each of the many payments due to creditors from the debtor and determined which of the plan payments were required to be made through the Trustee in order for the plan to be confirmed and for the Trustee to receive his percentage payment.

This Court concludes that a case-by-case approach, which respects the general scheme of Chapter 12 and the functions of the Chapter 12 Trustee, yet retains a full measure of Court discretion to allow direct payments and thereby liberally afford Chapter 12 debtors a good opportunity to reorganize, is the most sound and useful approach. This Court will adopt that case-by-case standard and apply it to the particular facts of this Chapter 12 Debtor and this Chapter 12 Plan.

■ There are various features of this case and Debtor which reinforce the general rule that payments are to be made through the Trustee. Principal among these features are the following.

First, the checkered history of this Debtor's management of the farm operation and the bankruptcy estate, accounting for assets, communicating with creditors, and making timely payments, has been, at best, "satisfactory," and these characteristics reflect a need for monitoring by the Trustee.

Second, the history of Debtor's use and disposition of collateral has not been good. Indeed, there have been allegations of not insubstantial problems in locating, accounting for, and properly reporting with respect to the creditors' collateral.[5]

Third, and significant to this particular Plan, is the fact that the parties agreed, and presumably the creditor expressly requested, that the Trustee serve as escrow agent. The time, effort, expertise, responsibility and, not incidentally, the liability attendant to that role is not insubstantial.

Fourth, except for CRRC, all creditor claims including FNBCC are impaired. Approximately 30 unsecured creditors must

---

4. *See, In re Kline, supra* at 560, where the criteria to be used by the court included: (a) the diverse and competing interests of the debtor and trustee, (b) debtor's willingness and ability to make payments, (c) whether direct payments will adversely impact debtor's ability to comply with the plan, and (d) the manner in which the plan ... will ... operate.

5. Early in the case there were substantial allegations that the Debtor moved some cattle, which were collateral on a loan, from one location to another, and sold some cows, in violation of the loan agreement. Sale of milk product and proper accounting for proceeds was also a problem. The Debtor indicates this was done unintentionally, and this Court makes no finding that the Debtor did this willfully. Nevertheless, an "unreported" move of cattle and "unauthorized" sale of collateral cows or milk is of some concern to the Court and creditors.

be paid, a return of about 25%, and this is not an insubstantial task for the Trustee.

Fifth, FNBCC will receive under the Plan certain property which, coupled with secured notes, is a substantial and timely return on its principal claim. On the other hand, FNBCC's claim is impaired and it will receive only a small return on the $27,-580.69 unsecured portion of its claim. Although the Chapter 12 bankruptcy law was passed primarily to benefit the debtor farmers, this creditor with secured and unsecured claims will benefit from the Trustee's services, i.e., collection and distribution of payments, monitoring case, requiring timely Plan performance.[6]

Sixth, the Debtor now leases out much of her cow herd, and also now works part-time at non-farm employment, which leaves her less able to personally and directly manage the farm operation.

Seventh, the design of this particular Plan accords to the Trustee a total fee of approximately $6,500.00,[7] if all payments except those to CRRC, the only unimpaired creditor, are made through the Trustee. That is not an unreasonable compensation for the substantial duties and important role that has been and will be required in this case of the Chapter 12 Trustee for the three-year life of the Plan.

These various factors, again, simply reinforce the general rule, or practice, against routine direct payments to creditors and particularly creditors with impaired, or modified, claims. In summary, however, the two most compelling, perhaps decisive, features of this case are: (1) the weak—not bad faith or dishonest, but weak—performance by the Debtor pre-petition and as a Chapter 12 Debtor, reflecting a need for Chapter 12 Trustee monitoring and services, and (2) an absence of proof, or a strong showing by the Debtor, of a probability of a failed Chapter 12 reorganization resulting from the payment and added burden of the Chapter 12 Trustee's fees. *See*, factors numbered one through five of *Matter of Pianowski, supra.*

## CONCLUSION

This Court concludes that, based on the specific record in this case, as measured against the various criteria for determining what, if any, direct creditor payments are appropriate, the impaired creditors should be paid through the Chapter 12 Trustee.

The exceptional, or "non-routine," circumstances justifying direct payments to creditors, particularly impaired creditor claims, rather than through the Trustee, do not appear in this record. Absent a demonstration of those circumstances by the Debtor, the general rule should be applied and direct payments will not be routinely approved.

IT IS THEREFORE ORDERED that Debtor's Motion to Confirm her Amended Chapter 12 Plan is DENIED. In recognition of the Debtor's ability or desire to amend her Plan in accordance with this Order, or make such other modifications as may be available to the Debtor, the Court hereby grants twenty (20) days within which to file an Amended Chapter 12 Plan. Absent the filing of an Amended Plan, or other appropriate pleading, the case shall be dismissed.

---

6. It should be noted that, although the two promissory notes held by FNBCC total $88,-000.00, the Chapter 12 Trustee will *not* receive 10% of that amount ($8,800.00) as part of his remuneration. Rather, the Chapter 12 Trustee will receive his payments only for the 36 month duration of the Plan, which is but a half portion of the theoretical "full" 10% fee.

7. Ten percent of payments over three years of priority tax claims ($317.00), attorney fees if approved ($560.00), FNBCC ($4,240.00), plus unsecured creditor claims ($1,372.00).