**In the Matter of Robert T. FINKBINE, Sandra S. Finkbine, Debtors.**

**Bankruptcy No. 3–87–04015.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 30, 1988.

Ray A. Cox, Dayton, Ohio, for Federal Land Bank.

Roger E. Luring, Troy, Ohio, for debtors.

Steven R. Fansler, West Liberty, Ohio, trustee.

### DECISION DENYING CONFIRMATION OF DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION AND ORDERING OTHER MATTERS

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1344(b) in a case referred to this Court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of estates, and (L)—matters regarding confirmation of plans.

### FACTS

The debtors, Robert T. and Sandra S. Finkbine, filed a petition under Chapter 12 of the Bankruptcy Code on December 30, 1987. The debtors' first Plan Of Reorganization (Doc. 8) was filed March 18, 1988. Objections to that plan were filed by the Chapter 12 Trustee (Doc. 12), The Farmer's Home Administration (Doc. 15) and The Federal Land Bank of Louisville (Doc. 16). This court, in an unreported decision filed June 9, 1988, denied confirmation of the debtors' first Plan Of Reorganization and granted the debtors time to file an amend-

ed plan (Doc. 25). The confirmation of the debtors' First Amended Plan Of Reorganization, the plan, (Doc. 26), filed June 27, 1988, is the subject of this decision.

The debtors own two (2) tracts of real estate. Tract I consists of 50.85 acres and is the tract on which the debtors' residence and buildings are located. Tract II consists of 50 acres of bare ground (Doc. 26). The debtors have two principal creditors, the Federal Land Bank of Louisville (FLB) and the Farmers Home Administration (FmHA).

The FLB holds a first mortgage on both parcels of land. The total amount due on FLB's loan is approximately one hundred seventy five thousand dollars ($175,000.00) (Doc. 26, p. 3). The court's previous decision found the fair market value of Tract I to be ninety three thousand six hundred sixty-five dollars and seventy cents ($93,-665.70) and Tract II to be fifty seven thousand four hundred dollars ($57,400.00). The debtors' plan (Doc. 26) proposes that FLB be paid ninety three thousand six hundred sixty five dollars and seventy cents ($93,665.70), at the rate of 12.25 percent interest per annum, amortized over a twenty-five (25) year term resulting in an annual payment of twelve thousand one hundred fifty dollars ($12,150.00).

FmHA has a second mortgage with an outstanding balance of one hundred sixty thousand dollars ($160,000.00) on both tracts of land. The debtors' amended plan proposes to treat this claim as an unsecured claim, the value of the land being less than the amount due to FLB on the first mortgage. (11 U.S.C. § 506(b))

FmHA also holds a lien on the debtors' equipment. The The balance due FmHA on this claim is approximately seventy six thousand dollars ($76,000.00). The fair market value of the equipment is thirty five thousand dollars ($35,000.00) (Doc. 26). The debtors' amended plan proposes to pay the thirty five thousand dollars ($35,000.00) at the rate of eight (8) percent per annum, fixed, which amortized over a seven (7) year term will result in annual payments of approximately six thousand seven hundred twenty-three dollars ($6,723.00) (Doc. 26).

Although most of the objections to the debtors' plan were resolved by agreements of the parties, the remaining contested issue involves the debtors' proposed direct annual payments of twelve thousand one hundred fifty dollars ($12,150.00) and six thousand seven hundred twenty three dollars ($6,723.00) to FLB and FmHA respectively. The debtors propose to make direct payment of these amounts and contend that these payments would not be "received by such individual (the Chapter 12 Trustee) under the plan" and would, therefore, not be subject to any assessment for trustee fees. The plan also proposes to diminish the percentage to be assessed for trustee fees from ten percent (10%) of any payments received by the trustee in the first year to five percent (5%) in the second and third years of the plan (Doc. 26). The only payment which the plan contemplates the trustee would receive, and which would therefore be subject to the assessment for a trustee's fee, is the debtors' disposal income, projected to be two thousand dollars ($2,000.00) per year. These issues have been addressed by the parties in oral arguments and the following documents: Trustee's Objection To Chapter 12 Plan (Doc. 28), Memorandum In Opposition To Trustee's Objection To Confirmation Of First Amended Plan Of Reorganization (Doc. 35) and Trustee's Brief Regarding Trustee's Fees And Plan Payments (Doc. 36).

## ISSUES PRESENTED

The issues presented for decision are (1) whether it is within the Bankruptcy Court's authority to permit a reduction in the percentage assessed by the United States Trustee for fees, (2) whether the court can confirm a plan that proposes direct payments of claims by the debtor so that a trustee's fee cannot be assessed for such payments and, (3) whether there are any limitations on the claims that can be paid directly by the debtor so that a trustee's fee cannot be assessed for such payments.

## DISCUSSION

**(1) Whether it is within the Bankruptcy Court's authority to permit a reduction in**

the *percentage* assessed by the United States Trustee for fees.

■ As a preface to the resolution of these issues, it is significant to note that the statutory provisions governing the percentage assessed as a fee by a Chapter 12 Trustee is not found in Title 11 of the United States Code; but, rather, is found in Title 28 of the United States Code.

Section 586(e) of Title 28 sets forth the procedure for establishing the fee for Standing Trustees. (With the advent of Chapter 12 this section was amended in 1986 to include Chapter 12 Trustees together with Chapter 11 and Chapter 13 Trustees.) Pursuant to § 586(e)(1), the Attorney General, after consultation with the United States Trustee, shall set the percentage for Chapter 12 Standing Trustees' fees at a sum not to exceed ten (10) percent for payments under four hundred fifty thousand dollars ($450,000.00) and three (3) percent for payments in excess thereof. The executive office for the United States Trustee, pursuant to the authority delegated by the Deputy Attorney General, after consultation with the U.S. Trustee for Region IX (Michigan and Ohio), set this fee at ten (10) percent of payments received by the trustee under the plan (28 U.S.C. § 586(e)(2)) (Doc. 36).

This court's review of the statute and case law concludes that the Attorney General is vested with the authority to fix the percentage to be assessed for Chapter 12 Trustee fees and this court is without a basis, equitable or otherwise, to adjust this statutory percentage. *See In re Savage,* 67 B.R. 700, 705 (D.R.I.1986); *In re Citrowske,* 72 B.R. 613, 615 (Bankr.D.Minn. 1987). Counsel for the debtor conceded in oral argument that it would not be legally appropriate for this court to alter the **percentage** set for the Chapter 12 Trustee's fee.

Therefore, to the extent the debtors' plan proposes to pay less than ten percent (10%) as the trustee's fee on payments received by the trustee under the plan during the second and third years of the plan, those provisions prevent confirmation of the proposed plan.

**(2) Whether the court can confirm a plan that proposes direct payments of claims by the debtor so that a trustee's fee cannot be assessed for such payments.**

■ The debtors contend that the provisions of Chapter 12 authorize them to make direct payment[1] to secured creditors on claims, whether impaired or unimpaired; and, as a result, the ten percent (10%) fee to the Chapter 12 Trustee cannot be assessed on any such direct payments (Doc. 35).

The trustee, in contrast, argues that there is no express statutory language to support the debtors' contention and such activity by the debtors is tantamount to case administration which has been legislatively assigned to the trustee under the Chapter 12 scheme. The trustee further asserts that allowing the debtors to make such payments, specifically on impaired claims, undermines the economic viability of the trustee's office and frustrates the congressional purpose in enacting both 11 U.S.C. § 1201 *et seq.* and 28 U.S.C. § 586 *et seq.* (Doc. 36).

The Chapter 12 decisions on this issue agree that provisions of a plan which authorize the debtor to make direct payment of a claim so that a trustee's fee cannot be assessed are permissible; but, the decisions differ on the *classifications of claims* that can be paid directly by the debtor to prevent the assessment. *Matter of Sutton,* 91 B.R. 184, 185 (Bankr.M.D.Ga.1988).

The Chapter 12 cases of *Matter of Sutton,* 91 B.R. 184 (Bankr.M.D.Ga.1988), *Matter of Logemann,* 88 B.R. 938 (Bankr.S.D. Iowa 1988) and *In re Hagensick,* 73 B.R.

---

1. Direct payment by debtors should not be confused with the concept of the debtor functioning as disbursing agent. The debtor may from time to time, at the court's discretion, serve as the disbursing agent for plan payments, but those payments are included in calculating the trustee fees. The direct payments proposed in the debtors' plan contemplate funds upon which the ten percent (10%) Trustee fee will not be assessed. See *In re Hagensick,* 73 B.R. 710, 713 (Bankr.N. D.Iowa, 1987).

710 (Bankr.N.D.Iowa, 1987), although containing varying approaches and analyses, conclude that direct payment is permitted, but only on claims not impaired under the plan.

The Chapter 12 cases of *In re Erickson Partnership*, 83 B.R. 725 (D.S.D.1988), *In re Crum*, 85 B.R. 878 (Bankr.N.D.Fla. 1988), and *In re Land*, 82 B.R. 572 (Bankr. D.Colo.1988), although also containing varying approaches and analyses, conclude that direct payment is permitted on claims, even if the claims are impaired under the plan.

The differing conclusions reached by the above courts stem, to a great degree, from the absence of statutory language that explicitly prohibits or permits such direct payments. It should be noted there is very little legislative history directly addressing the provisions of Chapter 12 applicable to this issue and none reflecting Congressional consideration of these Chapter 12 provisions in relation to the applicable provisions of Title 28 governing United States Trustee fees.

*In re Erickson Partnership*, 77 B.R. 738 (Bankr.D.S.D.1987), *aff'd* 83 B.R. 725, (D.S. D.1988), is the primary authority cited by the debtors. The trustee in this proceeding, as in *Erickson*, concedes that the debtors can make direct payments to creditors on secured claims that are not impaired. Such payments would not be subject to an

assessment for trustee fees because such payments are not being made under the plan, in the sense that such claims are not affected by the plan. That is, the claims are being paid according to their original terms or are otherwise not impaired under the plan.

Accordingly, the provisions of the debtors' plan that propose such direct payments on **unimpaired claims** do not prevent confirmation.

**(3) Whether there are any limitations on the claims that can be paid directly by the debtor so that a trustee's fee cannot be assessed for such payments.**

It is recognized that Chapter 12, although specifically addressed to the plight of the family farmer, incorporated many of the concepts and language found in other chapters of the Bankruptcy Code, particularly Chapter 13. *Matter of Schwarz*, 85 B.R. 829, 830 (Bankr.S.D.Iowa 1988). Accordingly, in resolving issues presented in Chapter 12 cases, courts have looked to concepts developed and determined under other chapters of the Code. One such concept is "impairment of claims" found in Chapter 11 (11 U.S.C. § 1124) [2] and incorporated in Chapter 13 decisions. See *Matter of Foster*, 670 F.2d 478, 485–493 (5th Cir. 1982)—extended discussion of the Chapter 13 debtor as disbursing agent and the direct payment of impaired secured claims; *In re Evans*, 66 B.R. 506, 509–510 (Bankr.

2. § 1124. **Impairment of claims or interests.** Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of

any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—

(A) with respect to a claim, the allowed amount of such claim; or

(B) with respect to an interest, if applicable, the greater of—

(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or

(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

E.D.Pa.1986)—discussion of Chapter 13 debtor's authority to make direct payment of impaired secured claims; *In re Lenz*, 74 B.R. 413, 414–416 (Bankr.C.D.Ill.1987), discussion of Chapter 12 debtor's direct payment of an impaired claim as payment "pursuant to the plan".

While recognizing that the language enacted in § 1225(a)(5)(B)(ii),[3] is different from the language enacted in § 1325(a)(5)(B)(ii),[4] and that 28 U.S.C. § 586(e)(2) provides that the Chapter 12 Trustee fee can only be assessed on "payments received" by the Chapter 12 Trustee "under the plan", this court attaches less significance to these differences than the courts which have granted debtors the authority to pay impaired claims without paying a trustee's fee during the period (3 to 5 years) that the trustee remains a statutorily designated participant in the plan.

Erickson and its progeny cases attach great significance to the "Trustee *or the debtor*" language included in § 1225(a)(5)(B)(ii), but not present in § 1325(a)(5)(B)(ii); however, Chapter 12 and Chapter 13 each contemplate that only two parties will be intimately involved with estate property—the debtor and the trustee. (Compare 11 U.S.C. §§ 1202(b)(4) and 1203 with §§ 1303 and 1304.) Consequently, the omitting of these two parties in § 1325(a)(5)(B)(ii) as opposed to the naming of them in the corresponding Chapter 12 subsection is not necessarily indicative of differing Congressional intent; and, in fact, there is no legislative history or other evidence that Congress intended by the language in § 1225 to authorize a debtor's direct payment of impaired claims.

It is clear that both Chapter 12 and Chapter 13 envision the trustee as the party primarily responsible for estate administration. Section 1226(a) states in pertinent part that "[p]ayments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan." Parallel language appears in § 1326(a)(2). Additionally, § 1226(a) states (verbatim in § 1326(a)(2)) "[i]f a plan is confirmed the trustee shall distribute any such payment in accordance with the plan." Further, § 1226(c) and § 1326(c) state that "the trustee shall make payments to creditors under the plan." The cumulative effect of these similarly worded sections provides clear evidence that Congress intended the Trustee to assume direction and control of the distribution of property in connection with a Chapter 12 case.

An appropriate reading of § 1225(a)(5)(B)(ii) merely recognizes that during both the three to five year period of direct participation by the Chapter 12 Trustee, and, thereafter, during the term remaining for payments to be made on any secured claim impaired under the plan, the debtor, subject to court approval, is authorized to "distribute" property "under the plan" in the capacity as a disbursing agent. The language of § 1225(a)(5)(B)(ii) easily permits a reading which recognizes that Congress intended to permit a Chapter 12 debtor to include "under a plan" provisions authorizing the debtor to "distribute property", for example, sign and send a check, or deliver a cash payment, "on account of such claim", for example, a feed or fertilizer supplier with whom the Chapter 12 debtor has continuing multiple transactions. Such a reading recognizes a Congressional intent to permit a Chapter 12 to obtain authorization pursuant to § 1225(a)(5)(B)(ii), to enter into and complete ordinary farm purchases or pay ordinary farm expenses as a disbursing agent.

A debtor's authority to act as a disbursing agent is substantially different from a debtor's authority to exclude the payment

---

**3.** § 1225 [in relevant part emphasis added]
    (a) Except as provided in subsection (b), the court shall confirm a plan if—
      (5) with respect to each allowed secured claim provided for by the plan—
      **(B)(ii) the ... property to be distributed by the trustee or the debtor under the plan on account of such claim....**

**4.** § 1325 [in relevant part emphasis added]
    (a) Except as provided in subsection (b), the court shall confirm a plan if—
      (5) with respect to each allowed secured claim provided for by the plan—
      **(B)(ii) the ... property to be distributed under the plan on account of such claim....**

of an impaired claim from a proposed plan. If the debtor's plan proposes distribution in connection with an unimpaired claim, direct payment can be authorized. Further, if the debtor and creditor have otherwise reached an agreement under the terms of which the claim will be excluded from the protection and operation of the plan, and such an agreement is approved by the court (See *Erickson,* 77 B.R. at 747–748, 83 B.R. at 728), such a claim may be excluded from the plan and paid directly by the debtor. (*See Matter of Caulfield,* 82 B.R. 55, 57–58 (Bankr.S.D.Ohio 1988)—discussing provisions for excluding a claim in a Chapter 13 case) In this case, however, neither the FLB claim, nor the FmHA claim, will be paid according to their terms, nor has the court approved the exclusion of these claims from the protection and operation of the proposed plan.

In this voluntary bankruptcy filing, the debtors only avoid the state law consequences of their failure to pay these claims according to their terms under the opportunity granted by Chapter 12. In the absence of clear Congressional directive, it is inconsistent with a statutory scheme that offers debtors opportunities to eliminate substantial obligations, to authorize debtors to avoid the responsibility of paying the statutory trustee fee, since the trustee's office is part of the Congressionally created system that enables Chapter 12 debtors to propose a reorganization.

Direct payment by debtors, particularly on impaired claims, has a potentially harmful impact on the entire Chapter 12 scheme. Section 586(e)(2) as amended, permits the Standing Trustee to assess a fee only against those payments received by the trustee under the plan. In the case at bar, the debtors propose that their disposable income, projected at two thousand dollars ($2,000.00) per year, be paid to the trustee while the debtors make direct payments of approximately eighteen thousand dollars ($18,000.00) a year to the two impaired creditors. The Standing Trustee related in his brief (Doc. 36), and during oral argument, that, as of April 4, 1988, twenty-two (22) Chapter 12 plans have been confirmed by this court. Many of these confirmed plans do not have a specific projected income figure, but rather, state that "all disposable income" will be submitted to the trustee. The trustee, suggesting this case is a fairly accurate representation of Chapter 12 cases in this court, estimates that if direct payments by debtors on impaired claims were not subject to an assessment for a trustee's fee during the three to five year period of direct trustee participation, the trustee's aggregate annual compensation would total four thousand four hundred dollars ($4,400.00) per year (Doc. 36). The trustee's expenses, in contrast, for the period November, 1986 to December, 1987 exceeds twenty-seven thousand dollars ($27,000.00).

The debtors also argue that it would be unreasonable to pay the ten percent (10%) fee in this case because the trustee's duties will consist, essentially, of writing two (2) checks per year during a three (3) year period. This is, at best, an incomplete and misleading description of the many complex and multifaceted duties and responsibilities of the Chapter 12 Trustee (11 U.S.C. § 1202), *See Logemann,* 88 B.R. at 941. Further, this argument is inconsistent with the administrative scheme of the trustee program, which contemplates spreading the costs on a pro rata basis among all Chapter 12 debtors in a particular district. *In re Savage,* 67 B.R. 700, 707 (Bankr.D.R.I.1986).

Congress, in enacting Chapter 12 was clearly concerned with the plight of the family farmer and the alarming rate at which such farms were failing—hence the proposed favorable treatment to be accorded a debtor's reorganization in Chapter 12 (H.R.Rep. No. 99–764, 99th Cong.2nd Sess. 48–49 (1986), U.S.Code Cong. & Admin. News 1986, p. 5227), Bankruptcy Courts should evidence this same concern in applying and defining the provision of Chapter 12; however, in the absence of a specific statutory requirement, no Congressional enactments should be construed in a manner that disables other Congressionally created components of the bankruptcy court system. Should this court give *Erickson* the deference the debtors request, the inev-

itable result will be undue interference with a Congressional enactment in the absence of a Congressional directive, and a departure from two long standing components of bankruptcy law present under all other chapters of the code—similar treatment for similar claims and the payment of the expenses of administration from the assets of administration.

While this court does not believe it has an obligation to assess or collect fees for the United States Trustee's Office, the correction of a seemingly inflexible, or an arguably inappropriate, percentage assessed by the United States Trustee's program is a matter of administrative or Congressional correction and is not to be remedied by wrenching from the provisions of one Chapter of the Code a result that is neither required by the statutory language of that chapter, nor consistent with the concepts developed and decided under other similar Chapters of the Code.

The court in *Hagensick,* wrestled with the same issue of direct payment pursuant to a Chapter 12 Plan and concluded that the debtor may only make direct payments, if the debtor "in no way alters, modifies or adjusts the rights or claims of the creditor." *Hagensick,* 73 B.R. at 714; *Accord, Logemann,* 88 B.R. at 941; *Sutton,* 91 B.R. at 186.

This court is persuaded that *Hagensick, Logemann* and *Sutton* represent a view more appropriate to the resolution of Congress's concerns in enacting not only Chapter 12 but also the United States Trustee's program. Whatever the extent of the authority granted to the debtor by 1225(a)(5)(B)(ii), in the absence of specific language authorizing direct payments rather than distribution disbursements, and in the absence of any legislative history or statements supporting such a departure from established bankruptcy law concerning a debtor's payment of impaired claims, this court is unable to adopt the debtors' position.

IT IS THEREFORE ORDERED that the confirmation of the Debtors' First Amended Plan (Doc. 26) is DENIED. The debtors are GRANTED leave to modify their First Amended Plan and may file a second amended plan containing provisions consistent with this decision not later than twenty-one (21) days from the date of this order or this case shall be DISMISSED.

SO ORDERED.