**In re John A. BETTGER, Tedra A. Bettger, Debtors.**

**Bankruptcy No. 689–60163–R13.**

United States Bankruptcy Court, D. Oregon.

Sept. 29, 1989.

■

Barry Taub, Eugene, Or., for debtors.

Fred G. Long, Eugene, Or., trustee.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Judge.

This matter comes before the Court for confirmation of the debtors' Chapter 13 Plan dated January 16, 1989 and the trustee's objection thereto.

## FACTS

Debtors filed their petition for relief herein under Chapter 13 of the Bankruptcy Code on January 18, 1989. On February 1, 1989 they filed their proposed Chapter 13 plan dated January 16, 1989 (the plan).

Paragraph 1 of the plan provides as follows:

1. The future earnings of the debtor(s) are submitted to the supervision and control of the Court, and the debtor(s) shall pay to the trustee the sum of $100.00 monthly, for 36 months, plus debtors shall pay to the trustee the net proceeds referred to in paragraph 8 of the Plan.

Paragraph 8 of the plan provides as follows:

8. Within six months after confirmation of this plan debtors shall sell the real estate located in Swiss Home, OR and at that time shall pay in full the allowed secured claims of Credithrift, Lane County and Siuslaw Valley Bank. Debtors shall then pay to the trustee the net proceeds of said sale after the deduction of costs of sale and payments to creditors listed in this paragraph.

All three of the above-named creditors have security interests in the real property (Swiss Home property) proposed to be sold by the debtors. Lane County is owed approximately $3,000 for property taxes, Siuslaw Valley Bank (the Bank) is the beneficiary of a first deed of trust encumbering the property and is owed approximately $33,000 and Credithrift of America, Inc. (Credithrift) holds a lien encumbering the property that is junior to the lien of the Bank and is owed approximately $15,000.

The Bank, Credithrift and the trustee objected to confirmation of the plan on various grounds. In addition, the Bank filed a motion for relief from the automatic stay.

On May 11, 1989 a combined hearing was held on the objections to confirmation and the Bank's Motion for Relief. At the hearing, debtors agreed to amend the plan to provide that if the Swiss Home property was not sold by October 1, 1989, they would execute a non-merger deed-in-lieu-of-foreclosure to Credithrift. Credithrift then withdrew its objection to confirmation. This court found that the bank was adequately protected by an equity cushion in the Swiss Home property. Accordingly, this court denied the Bank's motion for relief and overruled its objection to confirmation. The trustee objected to confirmation of the plan because the plan provides that the proceeds from the sale of the Swiss Home property would be paid directly by the debtors to the above-named secured creditors. In addition, the costs of sale would also be paid directly by the debtors.

It is the trustee's position that all proceeds of the sale should be paid to him and that he should pay the costs of sale and the secured creditors. Debtors have acknowledged that the excess proceeds from the sale of the property should be turned over to the trustee for distribution to unsecured creditors. Debtors seek to make payments to the secured creditors and the costs of sale directly to avoid the payment of the trustee's commission regarding these payments.

This court took under advisement the trustee's objection to confirmation of the plan and ordered that the deed in lieu of foreclosure be delivered to the trustee to be held pending the resolution of this matter. The parties were given an opportunity to submit post-hearing briefs concerning the trustee's objection. The time for submission of such briefs has now passed.

A stipulated order has been entered herein on September 18, 1989 extending the October 1, 1989 deadline for the recordation of the deed in lieu of foreclosure to October 20, 1989, if necessary to allow the debtors to complete the sale of the Swiss Home property.

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 U.S.C. unless otherwise indicated.

Section 1326(c) provides:

Except as otherwise provided in the plan or in the Order Confirming the Plan, the trustee shall make payments to creditors under the plan.

It has been held that this provision gives the Court discretion to allow direct payments to creditors under a confirmed Chapter 13 plan by the debtor. *In re Burkhart*, 94 B.R. 724 (Bankr.N.D.Fla.1988).

In this district, it has been held that direct payments to unsecured creditors are not appropriate. *In re Eby*, 38 B.R. 318 (Bankr.D.Or.1984). If direct payments to unsecured creditors were permitted, it would be difficult for the trustee and the court to know if the debtor had made all of the required payments under the confirmed Chapter 13 plan. This is important for a number of reasons, the most important of which is that the debtor is not to receive a discharge pursuant to § 1328(a) until all payments have been made under the plan. Requiring that such payments be made by the trustee also relieves unsecured creditors of the need to monitor the debtors' performance, or to insure that they have received their pro-rata share of payments.

On the other hand, it has been a long standing policy of this district to allow direct payments by debtors to fully secured creditors where no arrearages exist and the terms of the original contract are not modified.

Modification usually means a change in the amount or frequency of periodic payments, a change in the interest rate, the balance due or an extension of the non-default maturity date. Here the debtors are not seeking to modify any of these terms. They merely seek a short time in which to sell the collateral and distribute the proceeds to the secured creditors, in lump sum.

In *Eby, supra*, Judge Hess noted, "... it may be appropriate in some cases for the debtor to make payment of named secured claims directly to each secured creditor rather than through the trustee, ..." 38 B.R. at 319.

In a Chapter 12 case, *In re Pianowski*, 92 B.R. 225 (Bankr.W.D.Mich.1988) the court established a list of non-exclusive factors that could be considered by the court when asked to allow direct payments. The factors which are applicable to this case are:

1. the plan treatment of each creditor to which a direct payment is proposed to be made;

2. the consent, or lack thereof, by the affected creditor(s) to the proposed plan treatment;

3. the legal sophistication, incentive and ability of the affected creditor to monitor compliance;

4. the ability of the trustee and the court to monitor future direct payments;

5. the potential burden on the trustee;

6. the possible effect upon the trustee's salary or funding of the U.S. Trustee system;

7. the potential for abuse of the bankruptcy system;

8. the existence of other unique or special circumstances.

Applying these factors to this case, it is apparent that Lane County has not objected to the treatment to be provided to it under the debtors' plan, Credithrift has consented and only the Bank has objected. These secured creditors are sophisticated, represented by legal counsel and can amply monitor the debtors' performance. In addition, it is important that the debtors' plan calls for only one lump sum payment to these creditors. Thus, the trustee can perform his "monitoring" functions by simply reviewing escrow closing statements. This

plan, therefore, does not impose much burden on the trustee.

Here, requiring that all of the proceeds of the Swiss Home property sale be paid through the trustee would result in a windfall to the trustee which should be avoided, *see In re Mikkelsen Farms, Inc.,* 74 B.R. 280 (Bankr.D.Or.1987). Thus, the direct payments proposed by the debtors should be allowed.

■■■ This raises the question as to whether or not the trustee's percentage fee should be applied to the entire proceeds of the Swiss Home property sale (even though the debtors would be making payments directly to secured creditors and for the costs of sale) or merely to the net equity, if any, which will be tendered to the trustee by the debtors?

28 U.S.C. § 586(e)(2) provides in pertinent part as follows:

> Such individuals shall collect such percentage fee from all payments *received by such individual* under plans in the cases under Chapter 12 or Chapter 13 of Title 11 for which such individual serves as trustee.... (emphasis added).

Here, the trustee will only receive the net equity, if any, from the Swiss Home property sale. The other proceeds will be disbursed directly to pay the costs of sale and the secured creditors above-named. Hence, no fee should attach. In the alternative, no fee should attach in the event the deed in lieu of foreclosure is recorded.

■■■ In order to insure, however, that all of the proceeds from the Swiss Home property are properly disbursed, the debtors must file and cause to be noticed to all interested parties, a notice of intent to sell which should identify the buyer(s) and the essential terms of sale, including the amounts required to be paid as part of the costs of sale (including the recipient(s) of such payments) and the amounts to be paid to each of the three secured creditors named above. Interested parties must be given a period of at least 10 days in which to object to the proposed sale or any of the proposed payments. The October 20, 1989 deadline (for the recordation of the deed in lieu of foreclosure) should be extended for an additional 10 days if necessary to complete this sale process. With this modification, together with the amendments announced by the debtors at the confirmation hearing and the stipulation referred to above, the debtors' plan should be confirmed, an order consistent herewith shall be entered.

This opinion constitutes the courts findings of fact and conclusions of law, they shall not be separately stated.