In the Matter of Leonard LOGEMANN, Clarabell Logemann, Debtor.

Bankruptcy No. 87–188–W J.

United States Bankruptcy Court, S.D. Iowa.

Aug. 16, 1988.

Anita L. Shodeen, Des Moines, Iowa, Chapter 12 Trustee.

C.R. Hannan, Council Bluffs, Iowa, for debtors.

Kevin Query, Asst. U.S. Atty., Des Moines, Iowa, for Commodity Credit Corp.

Jack E. Reusch, for FDIC.

Steven H. Krohn, Council Bluffs, Iowa, for FLB.

ORDER ON OBJECTION TO PLAN

LEE M. JACKWIG, Chief Judge.

On May 4, 1988 a hearing on confirmation of plan was conducted in Council Bluffs, Iowa. Among the participants at the hearing were C.R. Hannan, the debtors' counsel, and Anita L. Shodeen, the standing Chapter 12 trustee. The sole issue before the court is whether the debtors' proposed deedback of certain farmland is subject to trustee's fees. The court ordered briefs to be filed by June 6, 1988. Only the trustee submitted a brief. The court considers the matter fully submitted.

FACTUAL BACKGROUND

On January 28, 1987 the debtors filed a petition for relief under Chapter 12. On March 27, 1987 the Federal Land Bank (FLB) filed a proof of claim in the amount of $143,795.14 plus interest, fees and expenses. This claim is secured in part by a first mortgage on 272 acres of farmland. Under their amended and substituted plan the debtors propose to fix the FLB's allowed secured claim at $168,500.00. The debtors plan to convey the 272 acres to the FLB in full satisfaction of their debt. The plan calls for the FLB to sell the land back to the debtors on contract on certain terms not relevant here. The debtors propose not to pay trustee's fees on the contract payments made to the FLB.

DISCUSSION

The trustee argues that payments on all impaired claims are subject to trustee's fees. She contends that the debtors' treatment of the FLB's claim impairs the claim. Thus, she concludes payments made on the FLB contract must be included in calculating the fees.

Cases considering the fee issue generally fall along two lines. The first holds that claims that are modified and thereby impaired are subject to trustee's fees. *In re Greseth*, 78 B.R. 936 (D.Minn.1987); *In re*

[redacted] 

*Hildebrandt,* 79 B.R. 427 (Bankr.D.Minn. 1987); *In re Rott,* 73 B.R. 366 (Bankr.D.N. D.1987); and *In re Hagensick,* 73 B.R. 710 (Bankr.N.D.Iowa 1987). In *Hagensick,* the bankruptcy court relied upon Chapter 13 cases in interpreting the "payments made under the plan" language found at 11 U.S. C. section 1202(d)(1)(B).[1] After extensively surveying those cases, the court concluded that modified claims are to be considered "under the plan" and therefore subject to the trustee's fees. *Id.* at 714. Both the district court in *Greseth* and the bankruptcy court in *Hildebrandt* pointed out that 11 U.S.C. section 1222(a)(1) required that the plan "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan". *Greseth,* 78 B.R. at 940; *Hildebrandt,* 79 B.R. at 428. The *Hildebrandt* court also pointed out that:

> 11 U.S.C. § 1225(b) requires that all "disposable income" not necessary for "maintenance or support of the debtor" or for "payment of expenditures necessary for the continuance, preservation and operation of the debtor's business" be paid into the plan. Payments to prepetition creditors do not fit under either exception above.

*Hildebrandt,* 79 B.R. at 428.

The *Greseth* and *Hildebrandt* courts expressed concern regarding the compensation scheme for standing Chapter 12 trustees. Under the U.S. Trustee program, those trustees are paid from the fees they collect. See 28 U.S.C. section 586(e). The courts noted that if payments were made "outside of the plan" the payment mechanism would be undermined. *Greseth,* 78 B.R. at 940; *Hildebrandt,* 79 B.R. at 428–429.

In contrast, the courts in *In re Erickson Partnership,* 83 B.R. 725 (D.S.D.1988) and *In re Land,* 82 B.R. 572 (Bankr.D.Colo. 1988) ruled that payments on impaired claims are not subject to trustee's fees if debtors directly make payments to those creditors. Both district courts found that 11 U.S.C. section 1225(a)(5)(B)(ii) authorized direct payments. That section provides:

> (a) Except as provided in subsection (b) the court shall confirm a plan if—
>
> ....
>
> (5) with respect to each allowed secured provided for by the plan—
>
> ....
>
> (B)(ii) the value as of the effective date of the plan, of property to be *distributed by the trustee or the debtor* under the plan on account of such claim is not less than the allowed amount of such claim.

(Emphasis added.) The courts also relied on 11 U.S.C. section 1226(c) which reads "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

Central to the *Erickson* and *Land* resolution of the fee issue was 28 U.S.C. section 586(e) which governs compensation of standing Chapter 12 and 13 trustees in the United States Trustee Districts. It provides:

> (e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—
>
> (A) a maximum annual compensation for such individual, not to exceed the annual rate of basic pay in effect for step 1 of grade GS–16 of the General Schedule prescribed under section 5332 of title 5; and
>
> (B) a percentage fee not to exceed—
>
> (i) in the case of a debtor who is not a family farmer, ten percent; or
>
> (ii) in the case of a debtor who is a family farmer, the sum of—
>
> (I) *not to exceed ten percent of the payments made under the plan of*

1. Subsections (c) and (d) of 11 U.S.C. section 1202 have since been repealed in both the Northern and Southern Districts of Iowa by operation of section 302(d) of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986. 28 U.S.C. section 586(e) now governs the appointment and compensation of standing trustees.

*such debtor*, with respect to payments in an aggregate amount not to exceed $450,000; and

    (II) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;

based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from *all payments received by such individual* under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

*Id.* (emphasis added). The courts found the latter underscored language to be indicative of Congressional intent that fees are to be calculated only on payments actually received by the trustee. They concluded that the Chapter 13 cases relying on the "under the plan" theory for purposes of assessing fees are no longer apposite to the issue. Rather, the courts considered the critical factor to be whether the trustee or the debtor makes the payment.

    Under the *Erickson* and *Land* approach, it is clear that to the extent debtors are permitted to make direct payments, such payments cannot be used in calculating the trustee's fee. A likely effect of these decisions on the operation of the standing Chapter 12 system is to deprive the system of its funding source. The *Erickson* court recognized this but concluded that the trustees must seek a remedy from Congress, not from the courts. *Erickson*, 83 B.R. at 729. Yet, the court in *In re Wright*, 82 B.R. 422, 423 (Bankr.W.D.Va. 1988) emphasized that it retained the discretion to determine what payments are received by the trustee:

Notwithstanding the fact that 28 U.S.C. § 586 now vests in the Attorney General the authority to set a maximum 10 percent fee collectible by the trustee 'from all payments received', and thus fix the trustee's annual compensation, the bankruptcy court in the confirmation process continues to control what funds are in fact received by the trustee.

    This court finds reliance upon 11 U.S.C. sections 1225(a)(5)(B)(ii) as authority for direct payments on impaired claims misplaced. The reference to property being "distributed by the trustee or the debtor" may simply anticipate the direct payments that will be made by the debtor once the plan, which may extend three years or five years with permission of the court pursuant to 11 U.S.C. section 1222(c), is otherwise completed. Indeed, 11 U.S.C. section 1325(a)(5)(B)(ii) is similar to section 1225(a)(5)(B)(ii) except it mentions neither the trustee nor the debtor. Such omission appears noteworthy when compared with certain similarities and differences between other provisions of Chapter 12 and Chapter 13.

    Both section 1222(b)(5) and section 1322(b)(5) permit the plan to provide for the curing of a default within a reasonable time and the maintainance of payments as long as "the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due".[2] Both section 1222(b)(7) and 1322(b)(8) state that the plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor".[3] However, section 1322 does not contain a subsection similar to section 1222(b)(9) which states that the plan may "provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the peri-

---

**2.** Unlike any provision in section 1222(b), 1322(b)(2) specifies that a debtor may not modify the rights of a holder of a claim secured only by the debtor's principal residence.

**3.** 11 U.S.C. sections 1207(a) and 1306(a) provide that property of the estate includes property the

debtor acquires and debtor's earnings while the respective chapter case is pending. 11 U.S.C. sections 1207(b) and 1307(b) indicate that the debtor typically remains in possession of property of the estate while the reorganization case is pending.

od permitted under section 1222(c)".[4] Similarly, whereas section 1322(c) provides that "the plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years", section 1222(c) inserts the introductory language—"[e]xcept as provided in subsections (b)(5) and (b)(9)".

Nor does this court find section 1226(c) persuasive authority for direct payments on impaired claims. The legislative history for former section 1326(b) which is now codified at section 1326(c) and which is similar to section 1226(c), indicates that the trustee typically should make the distribution to creditors under the plan. Senate Report No. 95–989, 95th Cong., 2d Sess. 142 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Moreover, both section 1226(a) and its counterpart, section 1326(a)(2), direct the trustee to distribute payments and funds received in accordance with the plan upon confirmation.[5] If the plan is not confirmed, the Chapter 12 trustee must return the payments to the debtor after deducting administrative expenses and the percentage fee for the standing trustee. 11 U.S.C. § 1226(a)(1) and (2). The Chapter 13 trustee must deduct administrative expenses according to 11 U.S.C. § 1326(a)(2). Both section 1226(b) and 1326(b) mandate that "[b]efore or at the time of each payment to creditors under the plan" certain administrative expenses and the trustee's percentage fee will be paid.[6]

■ Likewise, this court does not adopt the conclusion that Congress contemplated that trustee fees would not be calculated on certain impaired claims by including the language "all payments received by such individual" in 28 U.S.C. section 586(e)(2). Contrary to the findings in *Erickson* and *Land,* the concept of "under the plan" is still viable as can be seen from the above underscored language in section 586(e)(1)(B)(ii)(I). That is, the critical question with regard to calculation of the trustee's fee is whether the payment in issue is upon an impaired claim and is not whether the trustee makes the payment. *Hagensick,* 73 B.R. at 713.

Even if this court found the second line of cases persuasive, policy grounds would mandate the court frequently exercising its discretion to determine and to direct what payments are received by the trustee. Clearly, concern over providing reasonable compensation for standing trustees in order to attract qualified and dedicated individuals can not be overemphasized. Indeed, comparing the duties set forth in 11 U.S.C. section 1202(b) with those found at 1302(b) suggests that Congress intended the role of the Chapter 12 trustee to be broader than that of the Chapter 13 trustee.

Finally, this court finds that the active role of the trustee as a deterence to any "race to the courthouse" by one or more creditors during the time the case is pending is certainly of equal importance from a policy standpoint. That is, in the usual case permitting direct payment by the debtor to the creditor, the parties have agreed on the events of default and that the creditor, not the trustee, will monitor such oc-

---

**4.** Unlike the typical Chapter 12 fact situation, the only usual Chapter 13 indebtedness that would require more than between 3 and 5 years of payments to satisfy is that upon the principal residence. As noted in footnote 2, the rights of such a claim holder can not be modified.

**5.** 11 U.S.C. section 1222(a)(1) requires that the debtor submit all or as much future earnings and income to the trustee as is necessary for execution of the plan. 11 U.S.C. section 1322(a)(1) is similar to section 1222(a)(1). 11 U.S.C. section 1326(a)(1) requires the debtor to commence submitting to the trustee the payments proposed by a plan within 30 days after the plan is filed unless the court orders other-

wise. Parenthetically, it should also be noted that both section 1255(c) and section 1325(c) allow the court after confirmation of a plan to order any entity from which the debtor receives income to pay all or part of such income to the trustee.

**6.** 11 U.S.C. section 1226(b)(2) refers to sections 1202(d) and 1202(e); 11 U.S.C. section 1326(b)(2) refers to 28 U.S.C. sections 586(b) and 586(e)(1)(B). *See also* 11 U.S.C. sections 1202(b)(4) and 1302(b)(5) (trustee must ensure that debtor commences making timely payments required by confirmed plan).

currences. *In re Erickson Partnership,* 77 B.R. 738, 748 (Bankr.D.S.D.1987). Typically the arrangement contemplates lifting the stay without further notice or hearing upon an event of default. Obviously, that puts not only the debtor but also the other creditors under the plan at risk. It has been this court's policy to allow "default" language to take effect upon the completion of the plan term. While the case is pending, however, the trustee monitors the plan payments, the amount of disposable income and the debtor's general compliance with matters such as maintaining proper insurance.

■ In the present case, there can be no dispute that the treatment of the Federal Land Bank's claim has been modified from the original loan documents. Accordingly, the claim is impaired. It is under the plan. Plan payments on that claim are subject to the trustee's percentage fee.

### CONCLUSION AND ORDER

WHEREFORE, based on the foregoing discussion, the court finds that Federal Land Bank's claim is impaired, that the contract payments are under the plan and that they are subject to the trustee's fees.

THEREFORE, the trustee's objection to the plan is sustained. The debtors shall submit an amended plan that comports with this order by September 6, 1988.