**In re Foster D. HELLER and Rosemary R. Heller, Debtors.**

**Bankruptcy No. 87 B 31859.**

United States Bankruptcy Court, N.D. Illinois, W.D.

March 21, 1989.

News 5787, 6191.

Ralph E. Elliott, Freeport, Ill., for debtor.

Mary P. Gorman, Rockford, Ill., for trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on an Application for Allowance of Compensation and Reimbursement of Expenses filed by the attorneys for the Debtor, Plager, Hastings & Krug, Ltd. The Chapter 12 Trustee objected to the Debtors' proposal to pay the attorney's fees directly and not subject to the Trustee's statutory fee. Plager, Hastings & Krug, Ltd. (Plager, Hastings) is represented by Attorney Ralph E. Elliott. The Chapter 12 Trustee (Trustee) is represented by Attorney Mary P. Gorman.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

The Debtors are engaged in a significant swine and grain farming operation. They filed a Chapter 12 petition on December 14, 1987. Three secured creditors were listed: Federal Land Bank, secured by a first mortgage on the Debtors' real estate; Elizabeth State Bank, secured by a senior lien on the Debtors' livestock, machinery, and grain; and the Farmers Home Administration, secured by a junior mortgage on the Debtors' real estate and a junior lien on the Debtors' livestock, equipment and grain. Only one unsecured creditor is listed.

A Plan of Reorganization was filed on June 9, 1988. Through negotiations with several creditors and the Trustee, an Amended Plan was submitted for confirmation. Under the Plan, the secured claim of the Federal Land Bank in the amount of $167,000, would be paid in full on a semi-annual basis directly by the Debtors over a period of 25 years. The secured claim of Elizabeth State Bank, in the amount of $72,982, would be paid in full on an annual

basis to the Trustee for distribution over a period of 10 years.

The unsecured claims will be paid, to the extent of 3% of such claims, annually over a three year period to the Trustee for distribution. This class of claims includes that of the Farmers Home Administration, in the amount of $56,577.84; the unsecured portion of the debt owed to Elizabeth State Bank in the amount of $33,308.42; and the unsecured portion of the debt owed to the Federal Land Bank in the amount of $16,124.90. The costs and expenses of administration were to be paid by the Debtors within 30 days after approval of the Court. The Plan does not provide, on its face, whether the Debtors must make these payments directly or to the Trustee for distribution.

The Debtors' Amended Plan was confirmed on December 5, 1988. Shortly thereafter, the attorneys for the Debtors submitted an Application for Allowance of Compensation and Reimbursement of Expenses. At the hearing on the Application, the Trustee objected to the amount of the fees requested and the Debtors' request to pay the attorney's fees directly. Both objections are presently before the Court.

## COMPENSATION

Plager, Hastings requests $12,188.75 in attorney's fees based upon 162.25 hours rendered during the period of October 26, 1987, through December 14, 1988. Expenses in the amount of $104.93 are also requested.

Attorney compensation is allowable under Section 330 of the Bankruptcy Code, which provides in relevant part:

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses. 11 U.S.C. Section 330.

■ Although there are several methods adopted by courts to analyze the requirements under Section 330, this Court has chosen the lodestar method of analysis, whereby a lodestar figure—the amount of compensable time and appropriate rate of compensation—is determined and then adjusted upward or downward depending on the facts and circumstances of the case. In other words, the Court considers: (1) the quality factors, including the competency of counsel and other elements which reflect on the attorney's performance; (2) the results achieved by that performance; and (3) the quantity factors, comprised of actual necessary and reasonable time spent and reasonable amount charged per hour. *In re Mansfield Tire & Rubber Co.*, 65 B.R. 446 (Bankr.N.D.Ohio 1986); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557 (Bankr. D.Utah 1985).

The Court observes that the attorneys here have significant experience in bankruptcy, banking and commercial law and are competent bankruptcy practitioners. Moreover, the results achieved were satisfactory; the Chapter 12 Plan was confirmed and unsecured claimholders will receive a dividend.

A closer question arises under the quantity factors. The amount of time actually and necessarily incurred by the attorneys in this case appears to be high. Typical Chapter 12 cases rarely require the amount of time spent here. However, after reviewing the entries in the Application, the time spent was not so excessive as to be unreasonable, under the circumstances. The rate of $90 per hour is clearly reasonable in light of the attorneys experience and the work performed.

Consequently, the Court finds that the attorneys' fees of Plager, Hastings are reasonable and were actually and necessarily incurred.

## METHOD OF PAYMENT

The Trustee also objected to the Debtors' request to pay the attorneys' fees directly,

on the basis that to do so would avoid the imposition of the Trustee's percentage fee on said amount and force the Trustee to pay a part of the expenses of administration out of pocket.

The analysis of this issue must begin with 28 U.S.C. Section 586(e) which provides the framework for determining the compensation of the standing trustee in Chapter 12 or 13 cases. Subsection (e)(1) limits the amount a trustee may receive as compensation to "ten percent of the payments made under the plan of such debtor." Subsection (e)(2) further provides that

"Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee."

This section was recently amended, pursuant to the Bankruptcy Amendments Act of 1986, to include the phrase "received by such individual." Prior to the amendment, many courts held in Chapter 13 cases that claims which were modified through the debtor's bankruptcy case were subject to the trustee's statutory percentage, regardless of whether the trustee acted as the disbursing agent. *In re Foster,* 670 F.2d 478 (5th Cir.1982), *In re Tartaglia,* 61 B.R. 439 (Bankr.D.R.I.1986). "Modified" claims were considered "under the plan" and thus subject to the trustee's percentage on the theory that the debtor's ability to repay them was facilitated by the bankruptcy process, in contrast to those claims which are paid under the terms of the original agreement of the parties.

Several courts have held that Congress intended to change this result and allow the trustee to obtain the statutory percentage on only those payments which the trustee specifically received for distribution. *See In re Erickson Partnership,* 77 B.R. 738 (Bankr.D.S.D.1987), aff'd., 83 B.R. 725 (D.S.D.1988); *In re Land,* 82 B.R. 572 (Bankr.D.Colo.1988); aff'd 96 B.R. 310 (D.Colo.1988); *In re Wright,* 82 B.R. 422 (Bankr.W.D.Va.1988); *In re Crum,* 85 B.R. 878 (Bankr.W.D.Fla.1988).

Other courts, however, have concluded that the amendment to Section 586 did not change the "under the plan" analysis and that it is irrelevant whether the debtor or the trustee makes the payment. *In re Rott,* 73 B.R. 366 (Bankr.D.N.D.1987), *In re Citrowske,* 72 B.R. 613 (Bankr.D.Minn. 1987), *In re Greseth,* 78 B.R. 936 (D.Minn. 1987), *In re Hagensick,* 73 B.R. 710 (Bankr. N.D.Ia.1987), *In re Logemann,* 88 B.R. 938 (Bankr.S.D.Ia.1988). These cases hold that without such an interpretation, debtors could avoid making payments through the trustee and under the plan and Congress' mechanism for compensating trustees would be thwarted.

A plain reading of Section 586 shows that the trustee is entitled to the statutory percentage on only those payments which the trustee receives for distribution. Indeed, there is nothing in the legislative history that would suggest a different interpretation. It follows, therefore, that the debtor may make certain payments directly without incurring the trustee's statutory percentage. *See* 11 U.S.C. Sections 1225(a)(5)(B)(ii), 1226(c).

Equally true though is that the debtors are not free to make all payments under the plan directly simply to avoid the trustee's statutory percentage. The Court must determine whether the direct payments proposed by the Debtors are in conformity with the confirmation requirements of Chapter 12. 11 U.S.C. Section 1225; *In re Land,* 96 B.R. 310 (D.Colo.1988), *In re Greseth,* supra. In addition, the Court retains some discretion as to the reasonableness and amount of trustee's fees. *In re Kline,* 94 B.R. 557 (Bankr.N.D.Ind.1988), *In re Pianowski,* 92 B.R. 225 (Bankr.W.D.Mich. 1988), *In re Melita,* 91 B.R. 358 (Bankr.E. D.Pa.1988). Thus the debtors may make payments directly if the provisions of the Bankruptcy Code allow them and the trustee is adequately compensated.

As a practical matter, the differences in analysis under the two lines of authority are of little consequence. Most courts following the approach formerly applied in Chapter 13 cases—trustee's fees based upon whether the claim was "modified"

under the plan—do so in recognition that allowing debtors to pay directly would subvert the mechanism provided by Congress to adequately compensate trustees. Other courts which allow debtors to make payments directly without incurring trustee's fees do not grant debtors a free rein.[1] The bankruptcy court in *Erickson*, for example, allowed the debtor to make certain payments directly, in light of the adequacy of the trustee's compensation and the debtor's otherwise inability to reorganize. *See also, In re Land*, 96 B.R. 310 (D.Colo.1988). Thus, the courts recognize similar concerns as to the adequacy of compensation for the trustee versus the undue burdening of debtor's efforts to reorganize.

Two recent cases faced with the issue of whether attorneys fees, as administrative expenses, may be paid directly by the debtor support this observation. In *In re Pianowski*, supra, the court followed the cases which allow the debtor to make direct payments, under certain circumstances, and adopted an exhaustive list of factors for consideration. Several factors relevant here include:

(1) the business acumen of the debtor;

(2) the debtor's post filing compliance with statutory and court imposed duties;

(3) the ability of the debtor to achieve meaningful reorganization, absent direct payments;

(4) the plan treatment of each creditor to which a direct payment is proposed to be made;

(5) the consent or lack thereof, by the affected creditor to the proposed plan treatment;

(6) the legal sophistication, incentive and ability of the affected creditor to monitor compliance;

(7) the potential burden on the Chapter 12 trustee;

(8) the possible effect upon the trustee's salary or funding of the U.S. Trustee system.

The court held that under the circumstances, payments to the debtor's attorney may be made directly provided the debtor submits reports concerning all fee payments to the trustee and the court.

The court in *In re Kline*, supra, on the other hand, looked favorably on those cases which hold that the mechanism for trustee compensation would be undermined if the debtor is free to make all payments directly and adopted a scheme for determining which payments must be made through the trustee:

a) the claims entitled to priority under Section 507 which, pursuant to Section 1222(a)(2), must be paid in full;

b) unsecured claims;

c) secured claims which will be fully satisfied during the life of the plan, where the creditor's rights have been modified; and,

d) the cure of an arrearage on a secured claim where the debtor will maintain the current payments otherwise required of it, as contemplated by Section 1222(b)(5).

Under these standards all payments, including attorney's fees, must be paid through the trustee, except those secured claims that are not "modified" under the plan or those that will not be satisfied upon the completion of the plan.

In the case at bar, the treatment of most of the claims under the Debtors' Chapter 12 Plan have been stated sufficiently so that there is no question as to whether the Trustee or the Debtors must make the payment. This approach is the most favorable one. Negotiations between the parties to determine the appropriate combination of payments to be made by the Trustee and the Debtors can be expected to achieve a balance between the divergent and competing interests involved. However, because the Plan is silent as to whether administrative expenses are to be paid by the Debtors

---

**1.** An extreme position was taken by the District Court in *In re Erickson Partnership*, that the debtor is free to make all payments directly except those to unsecured creditors, and if trustees are undercompensated, the remedy is with Congress and not the courts. *See also, In re Crum*, supra. This position is unpersuasive since it is unquestioned that the monitoring activities of the trustee are necessary for the protection of all creditors. Interestingly, it appears that the bankruptcy court in *Erickson* did not adopt such a broad view.

directly or to the Trustee for distribution, the Court will provide guidance.[2]

The Debtors may pay the attorney's fees directly only if such action complies with the provisions of the Bankruptcy Code. A starting point is Section 1222(a), which provides in pertinent part:

(a) The plan shall—

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

Section 1226(b) further provides:

(b) Before or at the time of each payment to creditors under the plan, there shall be paid—

(1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and....

■ Considering these provisions together, administrative expense claimants under Section 503 and Section 507(a)(1) have been designated by Congress to receive priority. Such treatment warrants special attention. Moreover, the trustee has a general duty under the Bankruptcy Code to monitor payments made under the plan. 11 U.S.C. Section 1202(b)(4). Although this duty varies somewhat from that of a Chapter 13 trustee, the primary responsibility of monitoring the progress of the plan and payments therein is the same.[3] It can be said, therefore, that administrative expense payments have received special attention by Congress and should be monitored by the trustee as part of his statutorily imposed responsibilities. *See In re Greseth*, supra, *In re Rott*, 94 B.R. 163 (Bankr.D.N.D. 1988), and *In re Kline*, supra.

It may also be said that the trustee should be compensated for any monitoring activities which the trustee performs. The court in *In re Pianowski*, supra, apparently recognized the need for monitoring payments made for attorney's fees by requiring the debtor to submit reports of any payments to the trustee and the court, but refused to allow the trustee his statutory fee on any such payments. This misses the point. Even were the court able to monitor periodic reports of payments to attorneys, with the current caseload, it would be inappropriate because the trustee is better equipped and more capable of performing such activities. In addition, the trustee should not be required to perform such tasks without being compensated. Thus, the alternative to the trustee making payments—direct payment with "periodic monitoring"—is not satisfactory.

Another relevant provision, Section 1226(c), noticeably leaves open whether administrative expense claims should be paid by the Trustee. Section 1226(c) provides:

"Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

The term creditor under this section does not include administrative expense claimants. *In re Barbee*, 82 B.R. 470 (Bankr.N. D.Ill.1988), 11 U.S.C. Section 101(9). Consequently, the importance placed upon the payment of administrative expenses is not diminished by Section 1226(c) which leaves to negotiations the treatment of most other claims.

The Debtors' argument that the attorneys can adequately monitor the payment of attorney's fees is misplaced in part be-

---

**2.** The Plan defines payments to be made "direct by debtors" as those which are to be made directly and defines payments to be made "by trustee" as those to be distributed by the trustee. The Plan provides for administrative expenses to be paid "by the Debtors." Contrary to the Debtors' assertion, this language leaves open the question of who should make payments because the key terms "direct" or "by the trustee" are not present.

**3.** In Chapter 13 cases, the debtor must begin to make payments under the plan well before con-

firmation—within 30 days of the filing of the petition. 11 U.S.C. Section 1326. Under the provisions of Chapter 12, payments under the terms of the plan generally need not be made until confirmation. 11 U.S.C. Section 1226. Consequently, the trustee has a greater burden in Chapter 13 cases to monitor and collect payments before confirmation. However, because the amount of payments received in Chapter 12 cases is lower, so will the amount of the trustee's statutory percentage.

cause administrative expense claimants are not always attorneys who can effectively monitor their claims. Other professionals, such as accountants and real estate brokers participate in bankruptcy proceedings, albeit less frequently. Moreover, the need for review of payments is not just for the administrative claimant, but also for unsecured creditors who have a significant interest in having the plan succeed. Under the Debtors' theory, all payments could conceivably be made directly, which would relieve the requirement of having a Chapter 12 trustee at all. Congress did not intend such a result.

In the extreme circumstances where the trustee believed that his duty to monitor could be met without making the actual distribution, the trustee could allow for the payment of attorney's fees directly. Absent this type of circumstance, the statutory scheme established by Congress requires the distribution of administrative claims to be reviewed and therefore made by the trustee as part of his duty to monitor the payments under the plan.

Because administrative expenses must be paid to the Trustee for distribution, the Court need not address whether the Trustee is being adequately compensated in light of the Debtors' need for low administrative costs to achieve financial rehabilitation.

## CONCLUSION

Based on the foregoing, the Court concludes that:

(1) Plager, Hastings & Krug be allowed $12,188.75 in compensation for 162.25 hours actually and necessarily incurred;

(2) Plager, Hastings & Krug be allowed $104.93 for expenses actually and necessarily incurred; and

(3) The attorney's fees be distributed by the Trustee in conformity with the terms of the Debtors' confirmed Plan.

IT IS SO ORDERED.