In re John McGregor
FULKROD, Debtor.

John McGregor FULKROD, Appellant,

v.

Edmund R. BARMETTLER,
Trustee, Appellee.

BAP No. NV–89–1919–ORMe.

Bankruptcy No. 88–0707.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Jan. 24, 1991.

Decided April 29, 1991.

Daniel S. Corder, Reno, Nev., for appellant.

John White, Jr., Reno, Nev., for appellee.

Before OLLASON, RUSSELL, and MEYERS, Bankruptcy Judges.

## OPINION

OLLASON, Bankruptcy Judge:

Mr. Fulkrod petitioned for relief under Chapter 12 of the Bankruptcy Code on June 2, 1988. His plan of reorganization provided that three impaired creditors would be paid directly by him and not by the trustee. In confirming the plan, the bankruptcy court held that payments to impaired creditors must be made by the trustee. Mr. Fulkrod appeals from that order, claiming that it improperly increases the statutory fee payable to the trustee. We affirm.

Whether payments to creditors who are impaired by a Chapter 12 plan of reorganization must be made by the trustee, and which payments should be used to compute the trustee's fees, are questions of statutory construction which we review *de novo*. Three divergent views have emerged from substantial judicial contemplation of these issues.

The first holds that all payments to impaired creditors must be collected and disbursed by the trustee and that he is paid a fee based upon the aggregate of those collections and payments. The second holds that the trustee or the debtor may disburse the payments but that, regardless of who actually disburses, the trustee's fee

is computed as a percentage of the aggregate impaired claims. The third view holds that the trustee need not disburse payments on impaired claims, and is entitled to a fee only on the payments actually collected and disbursed.

The first view is exemplified by *Matter of Finkbine*, 94 B.R. 461, 463–64 (Bankr.S.D.Ohio 1988). Noting general agreement that certain claims may be paid directly by a reorganizing debtor, *Finkbine* cited *Matter of Sutton*, 91 B.R. 184 (Bankr.M.D.Ga. 1988), *Matter of Logemann*, 88 B.R. 938 (Bankr.S.D.Iowa 1988), and *In re Hagensick*, 73 B.R. 710 (Bankr.N.D.Iowa 1987), for the proposition that only unimpaired claims fit that category. The *Finkbine* court reasoned that:

> In the absence of a clear Congressional directive, it is inconsistent with a statutory scheme that offers debtors opportunities to eliminate substantial obligations, to authorize debtors to avoid the responsibility of paying the statutory trustee fee, since the trustee's office is part of the Congressionally created system that enables Chapter 12 debtors to propose a reorganization.

94 B.R. at 466. *Finkbine* cautioned that routine payment of impaired claims outside a reorganization plan would shift Congressionally assigned administrative duties, and jeopardize the continuing operation of the trustee's office. The court also observed that trustee's fees, though apparently disproportionate in a given case, are reasonable in the aggregate when awarded in accordance with the code. *See id.*

The bankruptcy court appears to have followed *Finkbine* in the case before us. The court acknowledged that "[s]ections 1225 and 1226 ... contemplate direct payments by Debtor" but found an implied restriction limiting such direct payments "to secured creditors whose claims are unaltered and consequently are unaffected by the Plan...."

The second view, exemplified by *Matter of Sutton*, 91 B.R. 184 (Bankr.M.D.Ga. 1988), reaches a similar conclusion without addressing whether the act of disbursement amounts to encroachment on the trustee's administrative authority. Citing *Matter of Logemann*, 88 B.R. 938 (Bankr. S.D.Iowa 1988), the *Sutton* court held that "the standing Chapter 12 trustee is entitled to collect a percentage fee on all payments made under the plan on impaired claims." 91 B.R. at 186. *Logemann* focused on 28 U.S.C. section 586(e)(1)(B)(ii)(I), which provides for trustee compensation in an amount not more than ten percent "of the payments made under the plan of such debtor," and concluded that the language "under the plan" makes the trustee's fee turn upon impairment rather than upon who makes the payment. 88 B.R. at 941.

*In re Hagensick*, 73 B.R. 710 (Bankr.N.D.Iowa 1987), arrived at the same conclusion from a survey of analogous Chapter 13 cases,[1] noting that when a defaulted mortgage was to be cured, or when a claim was limited to the value of the security, all payments on such claims were "under the plan" for purposes of determining trustee compensation. Conversely, payments were not deemed "under the plan" where the rights of creditors were not impaired, where the mortgage payments were never delinquent and there was no default to cure, and where current, fully secured automobile payments were made by automatic wage deduction. *Id.* at 713.

The common inquiry among these cases regards impairment to creditors' rights by operation of bankruptcy law. They do not consider the identity of the payor. This view thus concludes that the trustee's fee is computed from the payments on all impaired claims, regardless of who writes the checks.

The third view focuses on yet another statutory subsection. In *In re Erickson Partnership*, 77 B.R. 738 (Bankr.D.S.D. 1987), *aff'd.*, 83 B.R. 725 (D.S.D.1988), *re-*

---

1. Analogy to cases decided under Chapter 13 is particularly appropriate, as that chapter served as a model for Chapter 12, *In re Mann Farms, Inc.*, 917 F.2d 1210, 1214 (9th Cir.1990), and Congress has legislated like treatment of trustee's fees in both Chapter 12 and Chapter 13 cases. *See* 28 U.S.C. section 586.

*versed on other grounds,* 856 F.2d 1068 (8th Cir.1988), the court directed attention to 28 U.S.C. section 586(e)(2), which provides in part that the trustee "shall collect such percentage fee from all payments received by such individual under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee." *See* 77 B.R. at 749–751; 83 B.R. at 727–728. The Executive Office for United States Trustees has opined that section 586(e)(2) "clearly precludes the standing trustee from receiving the statutory percentage fee on payments not actually received by the standing trustee." 77 B.R. at 751 n. 15. *Erickson* and other courts that follow this view allow impaired claims to be paid outside the plan with no fee payable to the trustee for such payments. *Accord, In re Crum,* 85 B.R. 878 (Bankr.N.D.Fla. 1988); *Matter of Pianowski,* 92 B.R. 225 (Bankr.W.D.Mich. 1988); *In re Heller,* 105 B.R. 434 (Bankr.N.D.Ill.1989). The district court in *Erickson,* 83 B.R. 725, imposed no restriction upon the debtor's election to pay all secured creditors outside the plan without compensating the trustee, while *Heller* required that the court exercise its discretion to require sufficient trustee disbursements as will assure adequate compensation. 105 B.R. at 437–38 and n. 1.

Resolution of the conflicting interpretations of the Code requires an examination of the various statutory provisions and the contexts of their application. Statutory provision for direct payment from the debtor to the creditor under Chapter 12 derives from three separate provisions of Title 11. 11 U.S.C. § 1222(a) provides that:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

11 U.S.C. § 1225(a) provides that:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

\* \* \* \* \* \*

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) The value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; ....

11 U.S.C. § 1226(c) provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

28 U.S.C. section 586, which controls the compensation of standing trustees under chapters 12 and 13, provides for trustee compensation of not more than ten percent "of the payments made under the plan ..." and for collection of "such percentage fee from all payments received by [the trustee] under plans...." Section 586(e)(1).

The divergent judicial interpretations evidence some degree of ambiguity in the relevant statutes. That the trustee is to be compensated at up to ten percent of the plan payments, and is to collect such percentage from the funds tendered by the debtor for that purpose, would indicate that the trustee should make disbursements "under the plan." There appears to be no distinction, however, between impaired and unimpaired claims among the statutes authorizing the debtor to disburse payments.

It is plain that Congress intended for the Chapter 12 trustee to play a vital role in the administration of these cases.[2] Congress also intended for those who reap the benefits of Chapter 12 to pay a substantial portion of the cost of administering the trustee's office. Which payments must be earmarked for that purpose turns upon an analysis of what constitutes a payment "under the plan."

---

**2.** The legislative history of section 1326(b) (now 1326(c)), which is similar to section 1226(c), indicates that typically the trustee should collect the money and distribute it to the creditors.

Senate Report No. 95–989, 95th Cong., 2d Sess. 142 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 (cited in *Matter of Logemann,* 88 B.R. at 941).

We believe that Congress intended to use the term "under the plan" to mean those payments which result from the operation of Chapter 12 bankruptcy law. Those payments should be made by the trustee, and the trustee's fee should be assessed against the funds received from the debtor for that purpose. Typically, those payments will involve impaired claims which the debtor could not insist upon but for the protections of Chapter 12. To have those protections, the Chapter 12 debtor must support the trustee's office which is so integral a part of the Chapter 12 statutory scheme. The reckoning of the bill may not be precise, but it is the congressional benchmark, and we are bound to apply the law as written. We are mindful of the various policies advanced by the courts in favor of one position or another on this issue. But we believe that Congress was also cognizant of these policies and drafted the law with them in mind.

Generally, a plan should be drafted to include trustee payment of obligations impaired by bankruptcy law, and to exclude obligations which are not. While we do not conclude that impaired claims must always be disbursed by the trustee, or that unimpaired claims must always be disbursed by the debtor, we hold that the statutory trustee's fees should be assessed against all payments made by the trustee, and that the trustee should disburse all payments on impaired claims in the absence of a contrary plan provision.

A contrary provision in a plan or an order confirming a plan is permissible because the code contemplates flexibility in the payment of claims, and would allow direct payment of an impaired claim without trustee compensation in appropriate circumstances.[3] Whether such a plan provision should be allowed is committed to the sound discretion of the bankruptcy court. The exercise of that discretion would ordinarily consider, without implying any limitations, the impact of the trustee's fees on the ability of the debtor to reorganize and the adequacy of the trustee's compensation. The bankruptcy court's order requiring the trustee to make the disbursements on all impaired claims in the case before us is consistent with the general rule, and we can find no abuse of discretion in that determination.

Mr. Fulkrod contends that this result is unfair because the act of disbursing the checks is *de minimis.* We emphasize that the trustee is not compensated for writing checks, but for fulfilling each duty assigned by Congress.[4]

Affirmed.

---

**3.** By the foregoing, we do not imply that these sorts of arrangements should be routinely permitted by the bankruptcy courts. In the first place, there is a preference for trustees to administer estates and not to divide the job. And notwithstanding that debtor and creditor can agree to payment of a claim wholly outside the plan and, with the court's permission, to payment of even an impaired claim directly, such agreements can have dire consequences for both debtor and other creditors, particularly if they contain automatic lift stay or similar provisions which are triggered upon default. *See Logemann,* 88 B.R. at 941–942. Moreover, it is not improper to consider the impact of such agreements on the operation of the trustee's office. The *Logemann* court emphasized that "policy grounds would mandate the court frequently exercising its discretion to determine and to direct what payments are received by the trustee. Clearly, concern over providing reasonable compensation for standing trustees in order to attract qualified and dedicated individuals cannot be overemphasized." *Id. Accord In re Heller,* 105 B.R. at 438 (direct payment of impaired claim by debtor should be permitted where trustee is adequately compensated and where additional trustee fees would defeat reorganization).

**4.** Trustee's fees in excess of a pre-determined maximum annual compensation must be paid over to the United States Trustee. 28 U.S.C. section 586(e)(1)(A) and (2).