**In re Carl and Jane MARRIOTT, Debtors.**

**Bankruptcy No. BK 92–41539.**

United States Bankruptcy Court, S.D. Illinois.

Dec. 10, 1993.

Kenneth C. Meeker, U.S. Trustee, Indianapolis, IN.

Robert Kearney, CHP 12 Trustee, Benton, IL.

David Raymond and Douglas Antonik, Mt. Vernon, IL, for debtors.

### OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Following this Court's ruling that the Chapter 12 plan of debtors, Carl and Jane Marriott, improperly reduced the standing trustee's percentage fee below the mandatory ten percent of plan payments set by 28 U.S.C. § 586(e), *see In re Marriott,* 156 B.R. 803 (Bankr.S.D.Ill. July 29, 1993), the debtors filed a second amended plan which provided for direct payment by the debtors to certain creditors. The standing trustee and the United States Trustee have filed objections to this second amended plan, contending that Chapter 12 does not authorize debtors to make direct payment to creditors with impaired claims—claims modified by the plan—in order to avoid payment of the statutory trustee's fee. Rather, they assert, the

trustee's fee must be assessed on all payments "under the plan," which includes payments on claims modified by the plan. Since the debtors' plan fails to provide for payment of the ten percent fee on payments made directly by the debtors, the Chapter 12 trustee and United States Trustee object to confirmation of the plan.

In their plan, the debtors propose to make large annual payments to a single fully secured creditor, Peoples National Bank of Grayville ("Bank"), and to pay 100% of unsecured claims totaling $150,000. The debtors' plan provides that the Bank's claim of over $500,000 will be reduced by the application of net proceeds from a post-confirmation sale of the debtors' former homeplace and hog operation. The resulting indebtedness is divided into two separate secured claims, both of which are modified by the plan with amortization periods extending beyond the five-year plan period.

The plan provides that annual payments to the Bank will be made directly by the debtors. The plan further provides for payment by the trustee of unsecured claims and states that the trustee will receive a ten percent fee on payments "made by the debtors to the Chapter 12 trustee for distribution to [unsecured creditors]."

In response to the objections of the trustee and United States Trustee regarding direct payment of claims, the debtors assert that such payment is implicitly authorized by 11 U.S.C. § 1225(a)(5)(B)(ii), which refers to distribution of property by the trustee "or the debtor" and by 11 U.S.C. § 1226(c), which recognizes an exception to the rule of payment by the trustee.[1] The debtors maintain that these provisions, taken together, show that the trustee is not the only party intended to make distributions under a Chapter 12 plan. The debtors assert that, contrary to the trustee's contention, it is permissible to pay creditors directly in order to avoid pay-

ment of the trustee's fee and that the circumstances of this case make such payment particularly compelling because the fee assessed on their large annual payments to the Bank would be grossly disproportionate to the effort expended by the trustee in writing out a yearly check. In addition, the debtors observe, the trustee will be more than adequately compensated in this case by receiving the ten percent fee on payments to unsecured creditors.

Section 586(e), which controls the compensation of standing trustees under Chapters 12 and 13, provides for payment of a percentage fee on payments made "under the plan." For a Chapter 12 debtor, this percentage fee may not exceed the sum of ten percent of "payments made under the plan" on the first $450,000 and three percent of "payments made under the plan" in amounts over $450,000. 28 U.S.C. § 586(e)(1)(B)(ii)(I) and (II). The trustee is to collect this percentage fee from "all payments received by such individual under plans [in cases] for which such individual serves as standing trustee." 28 U.S.C. § 586(e)(2).

While it is generally agreed that direct payment is allowed for claims that are not modified by a plan of reorganization because such claims are paid according to their original terms and not "under the plan," *see Matter of Finkbine,* 94 B.R. 461, 464 (Bankr. S.D.Ohio 1988), courts have reached different conclusions concerning the extent to which Chapter 12 debtors may make direct payment of impaired claims. The Ninth Circuit Court of Appeals, the only circuit court to have addressed the issue, ruled in *In re Fulkrod,* 973 F.2d 801, 803 (9th Cir.1992), that the Bankruptcy Code does not authorize direct payment to creditors whose claims are modified by a plan of reorganization. The *Fulkrod* court, finding no statutory basis for such payment, reasoned that to allow a Chapter 12 debtor to pay impaired claims

---

1. Section 1225(a)(5)(B)(ii) states:
   (a) [T]he Court shall confirm a plan if—
   (5) with respect to each allowed secured claim provided for by the plan—
   (B)(ii) the value ... of property to be distributed by the trustee *or the debtor* under the plan on account of such claim is not less than the allowed amount of such claim....

11 U.S.C. § 1225(a)(5)(B)(ii) (emphasis added). Section 1226(c) provides:
   *Except as otherwise provided in the plan or in the order confirming the plan,* the trustee shall make payments to creditors under the plan.
11 U.S.C. § 1226(c) (emphasis added).

directly would render superfluous the compensation provision of 28 U.S.C. § 586(e) and would undermine the economic viability of the trustee's office, contrary to Congress' evident intent that the trustee play a central role in the administration of Chapter 12 estates. *Accord Matter of Finkbine; Matter of Logemann,* 88 B.R. 938 (Bankr.S.D.Iowa 1988); *see also In re Wagner,* 150 B.R. 753 (Bankr.D.N.D.1993), *rev'd on other grounds,* 159 B.R. 268 (D.N.D.1993).

Conversely, the court in *In re Overholt,* 125 B.R. 202, 206 (S.D.Ohio 1990), concluded that because the Code does not affirmatively limit the types of claims that may be paid directly under a Chapter 12 plan, it is permissible for the debtor to make direct payment of impaired claims. The *Overholt* court set forth a list of ten factors for determining when direct payment should be allowed in a particular case, finding that this result was consonant with the legislative purpose of providing a less expensive and more flexible means of reorganization for the family farmer. 125 B.R. at 212–213. The court focused on the language of § 586(e)(2) allowing for collection of the trustee fee from plan payments "received by such individual" and ruled that the trustee could collect no fee on payments made directly by the debtor, even though the payments were "under the plan" as payments made on impaired claims. 125 B.R. at 207. *Accord In re Erickson Partnership,* 77 B.R. 738 (Bankr.D.S.D.1987), *aff'd* 83 B.R. 725 (D.S.D.1988), *appeal denied,* 871 F.2d 1092 (8th Cir.1988).

These divergent judicial interpretations evidence a certain ambiguity in statutory provisions relating to the payment of claims under a Chapter 12 plan. Chapter 12 is replete with references to the trustee's payment of claims "under the plan" and clearly envisions that the trustee will have a central role in disbursing monies to creditors. *See* 11 U.S.C. § 1222(a)(1) (plan must provide for submission of such portion of debtor's future income to supervision and control of trustee "as is necessary for the execution of the plan"); 11 U.S.C. § 1225(c) (after confirmation court may order any entity from whom the debtor receives income "to pay all or any part of such income to the trustee"); 11

U.S.C. § 1226(c) (except as otherwise provided, "the trustee shall make payments to creditors under the plan"). However, while Chapter 12 provisions do not expressly authorize the debtor to bypass the trustee and pay claims directly, neither do they prohibit the debtor from making direct payment of claims "under the plan." Indeed, such direct payment appears to be contemplated by 11 U.S.C. § 1225(a)(5)(B)(ii), which requires the court to confirm a plan that provides, with respect to secured claims modified by the plan, that "the value ... of property *to be distributed by the trustee or the debtor under the plan* ... is not less than the allowed amount of such claim...."

The *Overholt* line of cases relies on this provision as authority for allowing the Chapter 12 debtor to pay impaired claims directly. *See Overholt,* 125 B.R. at 204–206; *Erickson Partnership,* 77 B.R. at 745–46. Such a construction of § 1225(a)(5)(B)(ii), however, renders ineffective the compensation provision for Chapter 12 standing trustees. *See Fulkrod,* 973 F.2d at 802. Section 586(e)(1) provides for assessment of the trustee's percentage fee on payments made "under the plan," while § 586(e)(2) allows for collection of this fee from payments "received by" the trustee under plans. If impaired claims were paid directly by the debtor, the trustee would receive no fee on payments "under the plan," contrary to the plain language of § 586(e)(1). Thus, for § 586(e) to have meaning, all payments "under the plan" must be "received by" the trustee during the period which the trustee serves, with the result that the debtor would make no payments of impaired claims during this period.

■■■ A statute should be interpreted, when possible, to avoid rendering another provision superfluous and without effect. *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993); *In re Fulkrod,* 973 F.2d 801, 802 (9th Cir.1992). An alternate interpretation of § 1225(a)(5)(B)(ii), and one that gives effect to the "under the plan" language of § 586(e)(1), is that this provision anticipates the debtor will pay long term debt provided for by the plan after the plan is completed and the trustee discharged. *See In re Loge-*

*mann*, 88 B.R. 938, 940 (Bankr.S.D.Iowa 1988). Chapter 12, unlike Chapter 13, allows a debtor to extend payments of allowed secured claims beyond the plan period.[2] *See* 11 U.S.C. § 1222(b)(9) (Chapter 12 plan may provide for payment of allowed secured claims under § 1225(a)(5) over a period exceeding the plan period). Section 1325(a)(5)(B)(ii), the Chapter 13 provision corresponding to § 1225(a)(5)(B)(ii), reflects this difference, providing only for the distribution of property under the plan and omitting the reference to distribution of property "by the trustee or the debtor."[3] *See Logemann*, 88 B.R. at 940. Thus, an interpretation of § 1225(a)(5)(B)(ii) as referring to the debtor's payment of impaired claims only after completion of the plan period is consistent with both the compensation provision of § 586(e) and the corresponding Chapter 13 provision, as well as with additional Chapter 12 provisions relating to the payment of claims by other than the trustee.[4] *See* 11 U.S.C. §§ 1226(c), 1228(a) and (e) (providing that secured claims on which payments extend beyond the life of the plan survive discharge, to be paid by the debtor after the trustee's dismissal).

It is to be presumed that the phrase "under the plan" has the same meaning in § 586(e)(1) as it has in Chapter 12 provisions referring to the payment of claims. *See Rake v. Wade*, —— U.S. at ——, 113 S.Ct. at 2192, ("[S]tatutory terms are often 'clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear....'") (quoting *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988)). The court in *Overholt* essentially ignored the "under the plan" language of § 586(e)(1), reasoning somewhat circularly that payments made by the debtor were not "under the plan" and subject to the trustee fee simply because they were not "received by the trustee." *See Overholt*, 125 B.R. at 211. It is generally understood that payments of claims are "under the plan" when the plan modifies payment terms that would be applicable absent bankruptcy. *See Logemann*, 88 B.R. at 941; *In re Hagensick*, 73 B.R. 710, 713 (Bankr. N.D.Iowa 1987); *cf. Rake v. Wade*, —— U.S. at —— ——, 113 S.Ct. at 2192–93 (a creditor's claim is "provided for by the plan" if the plan in any way modifies the rights of the creditor). Thus, the critical question in determining whether a payment is "under the plan" for purposes of § 586(e)(1) is whether the payment is on an impaired claim, and the identity of the party making the payment must turn on that determination.

Because the *Overholt* line of cases disregards the "under the plan" language of § 586(e)(1), the Court finds its reasoning that direct payment of impaired claims is allowed under Chapter 12 to be unpersuasive. Rather, a reading of the statutory provisions as a whole leads to the conclusion that an "under the plan" analysis is required despite the language of § 586(e)(2) that the trustee is to collect the specified fee on payments "re-

---

**2.** The only exception under Chapter 13 is the payment of a claim secured by the debtor's principal residence, which may not be modified in a Chapter 13 plan and is paid according to the terms of the mortgage, with payments typically extending beyond the period of the plan. *See* 11 U.S.C. § 1322(b)(2).

**3.** Section 1325(a)(5)(B)(ii) states that "the court shall confirm a plan if, with respect to allowed secured claims, the plan provides that "the value ... of property *to be distributed under the plan* ... is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii).

**4.** The United States Trustee asserts as an additional interpretation of § 1225(a)(5)(B)(ii) that it authorizes the surrender by the debtor of hard assets, e.g., real estate, in complete or partial satisfaction of a secured claim under the plan.

The Court finds this interpretation plausible but expresses no opinion on whether it accords with the rest of the statute. The Court does, however, question the *Fulkrod* court's explanation of § 1225(a)(5)(B)(ii) as authorizing the debtor to sign checks as a disbursing agent and make cash payments to suppliers with whom the debtor has ongoing transactions. *See Fulkrod*, 973 F.2d at 803, citing *Matter of Finkbine*, 94 B.R. at 465. As set forth above, to the extent such payments are on claims provided for by the plan, § 586(e)(1) and (2) would require that they be made by the trustee who would collect the statutory fee on them. Postpetition payments to suppliers would, of course, not be "under the plan" whether or not that supplier had a prepetition claim that was provided for by the plan.

ceived by such individual." *See Fulkrod; Logemann.* The Court accordingly determines, as did the *Fulkrod* court, that Chapter 12 does not authorize a debtor to make payments directly to creditors with claims modified by a plan of reorganization in order to avoid paying the trustee fee under 28 U.S.C. § 586(e).

Lest this result be perceived as the proverbial "tail wagging the dog" (with the provision for trustee compensation determining the trustee's function), the Court notes that the trustee performs a valuable service in monitoring the payment of claims provided for by a plan. Under 11 U.S.C. § 1202(b), the trustee must ensure that the debtor commence making timely payments required by the plan and take action if the debtor defaults on payments or seeks modification of the plan after confirmation. *See* 11 U.S.C. §§ 1208, 1229. Further, since a creditor being paid directly could take remedies upon default that would impact other creditors and jeopardize the debtor's reorganization, *see Logemann,* 88 B.R. at 941, the trustee's payment of claims under the plan prevents one creditor from benefiting at the expense of others and allows the trustee to monitor the debtor's compliance with the plan in such matters as determining the amount of disposable income to be paid to unsecured creditors. *Id.*

The *Overholt* court, in finding that the Chapter 12 debtor could pay long term debt directly as of the beginning of the plan, failed to consider these factors militating in favor of the trustee's supervision of payments during the plan period. 125 B.R. at 206. The Court agrees with *Overholt* that, in the case of an unimpaired claim being paid according to its original terms, it makes little sense to require payments to first be made through the trustee and then directly to the secured creditor upon completion of the plan. *Cf. Matter of Aberegg,* 961 F.2d 1307, 1310 (7th Cir.1992) (debtors were not required to pay unmodified residential mortgage through Chapter 13 trustee during plan only to arrange to make direct mortgage payments at the termination of the plan). However, such payment through the trustee is justified where, as here, the plan redefines the parties' obli-

gations not only as between themselves but also in relation to other creditors.

In the present case, the proposed terms of repayment on the Bank's impaired claim are changed at the completion of the plan period. Thus, the debtors will not simply be substituted for the trustee and do directly what had been done through the trustee. Presumably, this change takes into account that unsecured creditors will no longer be affected by the debtors' ability to make their proposed payments to the Bank. During the period of the plan, however, the trustee must remain vigilant for the concerns of unsecured creditors, bringing into play the statutory requirement that payments to impaired creditors be made through the trustee rather than by the debtors directly.

Because of the nature of the Bank's claim, the Court finds inapplicable the 7th Circuit case of *Matter of Aberegg,* 961 F.2d 1307, on which the debtors rely as supporting their direct payment to creditors. *Aberegg* involved a residential mortgage claim that was unmodified by the debtors' Chapter 13 plan. The *Aberegg* court found that disbursement through the trustee on such a claim was not required under 11 U.S.C. § 1322(a)(1), which provides for submission to the trustee of such portion of the debtor's future income "as is necessary for the execution of the plan." 961 F.2d at 1309. The court noted that "[t]his language has been uniformly interpreted as giving bankruptcy courts the discretion to permit debtors to make payment directly to some secured creditors . . .," citing *Matter of Foster,* 670 F.2d 478 (5th Cir.1982); *In re Jutila,* 111 B.R. 621 (W.D.Mich.1989); and *In re Burkhart,* 94 B.R. 724 (Bankr.N.D.Fla. 1988). *Id.*

The cases cited by the *Aberegg* court, like *Aberegg,* involved the direct payment of mortgage claims that were unmodified by the debtors' Chapter 13 plan. Because they dealt solely with unmodified claims, these cases fail to support the contention that impaired claims may be paid directly to avoid the trustee's fee. Indeed, the court in *Foster* ruled specifically that while an unmodified mortgage claim could be paid directly so as to be exempt from the trustee fee, when the claim was being treated under § 1322(b)(5)

(providing for the curing of arrearages) or any other provision of Chapter 13, the entire claim must be paid through the trustee as "under the plan." 670 F.2d at 488–89. Thus, even though *Aberegg* itself made no such distinction, its citation of *Foster* is consistent with the Court's determination that there can be no direct payment of secured claims that are modified by the plan.

The. Court recognizes that, under the unique facts of this case in which the debtors propose to pay 100% of unsecured claims totaling $150,000, the standing trustee would be more than adequately compensated if the percentage fee were imposed only on payments to unsecured creditors. In the typical Chapter 12 case, however, the amount of payments to unsecured creditors is minimal, with the result that the trustee would receive little for his efforts in administering the case. The Court, in its prior opinion, made clear that it questions the wisdom and necessity of instituting the standing trustee system in this district to replace the case trustee system that worked well for debtors and trustee alike. *See In re Marriott,* 156 B.R. at 806. The Court found, however, that it had no discretion to adjust the percentage fee that had been set by the Attorney General under 28 U.S.C. § 586(e). *Id.* In proposing direct payment to secured creditors whose claims have been modified by the plan, the debtors seek to do indirectly what the Court has ruled cannot be done directly.

The compensation scheme of § 586(e) does not contemplate that the trustee's fee in each case will be directly proportional to the effort involved or that each case will "pay its own way." Rather, it contemplates spreading the cost of the trustee's administration over the entirety of cases filed in a district. The debtors, who seek to avail themselves of the benefits of Chapter 12, must pay the attendant costs imposed by § 586(e). Accordingly, the Court holds that the debtors may not make direct payment of

secured claims that are "under the plan" in order to avoid payment of the trustee's fee.[5]

For the reasons stated, the Court sustains the objections of the United States Trustee and the Chapter 12 standing trustee to confirmation of the debtors' second amended plan.

SEE WRITTEN ORDER.

---

5. In addition to the Bank's secured claims, the debtors propose to make direct payment of a priority unsecured claim to the Internal Revenue Service. Although the United States Trustee and the standing trustee do not argue specifically concerning this claim, it constitutes an impaired claim that may not be paid directly under the

Court's ruling. Further, even those courts that find authority for direct payment of claims under 11 U.S.C. § 1225(a)(5)(B)(ii), have noted that this provision applies only to secured claims and does not authorize direct payment of unsecured claims such as that of the Internal Revenue Service here. *See Overholt,* 125 B.R. at 204–205.